**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

FEDERAL TRADE COMMISSION,      :
                                     :

       Plaintiff,             :         CIVIL ACTION
                                     :         No. 08-cv-2141

           v.              :
                                     :

CEPHALON, INC.,                    :
                                     :

       Defendant.           :

_____

**CEPHALON, INC.'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO PRECLUDE THE FTC'S DISGORGEMENT CLAIM**

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 3

    A.    2003 FTC Policy on Monetary Remedies ........................................................ 3

    B.    The Provigil Settlements and Private Litigation ................................................. 3

    C.    The FTC Provigil Case .................................................................................... 4

    D.    The FTC's Reversal Of Position ...................................................................... 6

    E.    Motion to Dismiss Decision ............................................................................. 6

III.   ARGUMENT .......................................................................................................... 7

    A.    The Plain Text Of Section 13(b) Of The FTC Act Authorizes Only Prospective
       Injunctions, Not Disgorgement Or Other Retrospective Monetary Remedies. ...... 7

        1.    Section 13(b), Unlike Another Provision Of The FTC Act Passed Only
            Two Years Later, Does Not Authorize The FTC To Seek Disgorgement. . 8

        2.    Congress's Decision To Expressly Limit Available Relief To Injunctions
            Precludes This Court From Ordering Disgorgement Under Its Inherent
            Equitable Powers. ............................................................................... 11

    B.    The Court Should Preclude the FTC's Disgorgement Claim As A Matter of
       Equity. ............................................................................................................ 17

        1.    The FTC Has Consistently Represented That It Seeks Only Prospective
            Injunctive Relief In This Case. .............................................................. 18

        2.    As The FTC Has Conceded, There Was No Clear Violation Of The Law
            At The Time Of The Challenged Settlements. ........................................ 20

        3.    Private Parties Can Obtain Complete Relief. ........................................... 23

IV.    CONCLUSION ...................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Avondale Fed. Sav. Bank v. Amoco Oil Co.*,
  170 F.3d 692 (7th Cir. 1999) ................................................................................15

*Bilski v. Kappos*,
  561 U.S. 593 (2010)..............................................................................................16

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988)................................................................................................7

*Commodity Futures Trading Comm'n v. White Pine Trust Corp.*,
  04-CV-2093 J (NLS), 2007 WL 1754819 (S.D. Cal. Apr. 20, 2007)....................23

*Connecticut Nat'l Bank v. Germain*,
  503 U.S. 249 (1992)..............................................................................................11

*DeSanto v. Rowan Univ.*,
  224 F. Supp. 2d 819 (D.N.J. 2002) .........................................................................7

*FTC v. Abbott Labs.*,
  No. 92-1364, 1992 WL 335442 (D.D.C. Oct. 13, 1992) .......................................22

*FTC v. Bronson Partners, LLC*,
  654 F.3d 359 (2d Cir. 2011)..................................................................................14

*FTC v. Febre*,
  128 F.3d 530 (7th Cir. 1997) ................................................................................14

*FTC v. Gem Merch. Corp.*,
  87 F.3d 466 (11th Cir. 1996) ................................................................................14

*FTC v. Magazine Sols., LLC*,
  432 F. App'x 155 (3d Cir. 2011) ..........................................................................12

*FTC v. Mylan Labs., Inc.*,
  62 F. Supp. 2d 25 (D.D.C. 1999) ..........................................................................14

*FTC v. Security Rare Coin & Bullion Corp.*,
  931 F.2d 1312 (8th Cir. 1991) ..............................................................................14

*FTC v. World Travel Vacation Brokers, Inc.*,
  861 F.2d 1020 (7th Cir. 1988) ..............................................................................22

*Ill. Brick Co. v. Illinois*,
  431 U.S. 720 (1977)..........................................................................................25

*In re Armstrong World Indus.*,
  432 F.3d 507 (3d Cir. 2005)...............................................................................19

*In re Lamictal Direct Purchaser Antitrust Litig.*,
  No. 12-cv-995, 2014 WL 282755 (D.N.J. Jan. 24, 2014)......................................21

*In re Lipitor Antitrust Litig.*,
  No. 12-cv-2389, 2014 WL 4543502 (D.N.J. Sept. 12, 2014)................................21

*In re Loestrin 24 Fe Antitrust Litig.*,
  No. 13-md-2472, 2014 WL 4368924 (D.R.I. Sept. 4, 2014).................................21

*In re Mirabilis Ventures, Inc.*,
  No. 6:09-cv-271, 2011 WL 2516881 (M.D. Fla. June 23, 2011) ............................7

*In re Tamoxifen Citrate Antitrust Litig.*,
  466 F.3d 187 (2d Cir. 2006)..................................................................................4

*In re TMI*,
  67 F.3d 1119 (3d Cir. 1995)..................................................................................8

*Jablonski v. Riverwalk Holding, Ltd.*,
  2012 WL 2254257 (N.D. Ill. June 14, 2012) ........................................................23

*King Drug Co. v. Cephalon, Inc.*,
  702 F. Supp. 2d 514 (E.D. Pa. 2010) ...................................................................20

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004)...............................................................................................8

*Meghrig v. KFC Western, Inc.*,
   516 US 479 (1996) ..................................................................................... passim

*Mervyn v. Nelson Westerberg, Inc.*,
  No. 11 C 6594, 2012 WL 6568338 (N.D. Ill. Dec. 17, 2012) .................................8

*Mitchell v. Robert de Mario Jewelry, Inc.*,
  361 U.S. 313 (1960)........................................................................................12, 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)...............................................................................................23

*NYLife Distribs., Inc. v. Adherence Grp., Inc.*,
  72 F.3d 371 (3d Cir. 1995)....................................................................................15

iii

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Inway, Inc.*,
    No. 02-1005, 2007 WL 473995 (M.D. Fla. Jan. 12, 2007), *aff'd*, 622 F.3d 1307 (11th
    Cir. 2010) ........................................................................................................7, 8, 14,15

*Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*,
    213 F.R.D. 537 (W.D. Mo. 2002), *aff'd*, 339 F.3d 1001 (8th Cir. 2003) ................................8

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*,
    632 F.3d 1111 (9th Cir. 2011) ........................................................................................14, 16

*Porter v. Warner Holding*,
    328 U.S. 288 (1946)....................................................................................12, 13, 14, 15

*Russello v. United States*,
    464 U.S. 16 (1983)................................................................................................10

*S.E.C. v. Lorin*,
    869 F. Supp. 1117 (S.D.N.Y. 1994)........................................................................24

*Schering-Plough Corp. v. FTC*,
    402 F.3d 1056 (11th Cir. 2005) ................................................................................3

*Schwab v. Philip Morris USA, Inc.*,
    2005 WL 2303821 (N.D. Ill. June 14, 2012) ..........................................................23

*Solutia Inc. v. FMC Corp.*,
    456 F. Supp. 2d 429 (S.D.N.Y. 2006)........................................................................7

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*,
    60 F.3d 867 (1st Cir. 1995)........................................................................18, 19, 20

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ................................................................................15

*United States v. Lane Labs-USA Inc.*,
    427 F.3d 219 (3d Cir. 2005)........................................................................ 12, 16, 17

*United States v. EME Homer City Generation, L.P.*
    *727 F.3d 274 (3rd Cir. 2013)* ........................................................................14, 16

*United States v. Olds*,
    426 F.2d 562 (3d Cir. 1970)........................................................................18

*United States v. Philip Morris USA, Inc.*,
    396 F.3d 1190 (D.C. Cir. 2005) ................................................................................15

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    344 F.3d 1294 (11th Cir. 2003) ................................................................................3

*Wal-Mart Stores, Inc. v. Dukes,*
   131 S. Ct. 2541 (2011) .................................................................9, 16

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ..........................................................................11

**FEDERAL STATUTES**

15 U.S.C. § 53(b) ....................................................................................8, 9

15 U.S.C. § 57b .........................................................................................10

15 U.S.C. § 57b(a)(2) ...........................................................................10, 22

18 U.S.C. § 1964(a) ...................................................................................15

15 U.S.C. § 45(m)(1)(B) .....................................................................10, 11, 22

**RULES**

Federal Rule of Civil Procedure 23(b)(2) ...............................................9, 15

**REGULATIONS**

FTC, Policy Statement on Monetary Equitable Remedies in Competition Cases ("Policy
   Statement"), 68 Fed. Reg. 45,820, 45,821 (Aug, 4, 2003) ............................. passim

**OTHER AUTHORITIES**

Amanda P. Reeves, *Muddying the Settlement Waters: Open Questions and Unintended
   Consequences Following FTC v. Actavis*, 28 Antitrust 9, 9 (2013) .......................21

Peter C. Ward, *Restitution for Consumers Under the Federal Trade Commission Act:
   Good Intentions or Congressional Intentions?* 41 AM. U. L. REV. 1139, 1174-75 n.
   195 (1992) .................................................................................9, 10

Restatement (Third) of Restitution and Unjust Enrichment § 3 & cmt. a (2011).........................21

S. 986, 92d Cong. § 203 (1971) ...........................................................................9

## I.      INTRODUCTION

From the inception of this case, the Federal Trade Commission disclaimed any right or intention to seek disgorgement from Cephalon.  As the agency made clear to the Court, it was "not seeking damages" because it did not "have the authority to do that"; the Commission stressed that it was "not seeking any kind of monetary relief," but instead was "seeking only an injunction."[1]  The Commission regularly emphasized that it was "not here to collect money."[2]  The FTC never referenced or even mentioned disgorgement until generic entry of modafinil rendered moot the FTC's original request for injunctive relief.

These representations were no accident.  Seeking disgorgement in this case would have violated the FTC's own policy statement on monetary remedies—which was passed pursuant to notice and comment—that was in effect at the time the FTC filed its complaint and limited the FTC's authority to seek disgorgement to cases involving clear violations of law.  The FTC readily conceded that it would not even be able to *win* the case, much less establish a clear violation that would justify the extreme remedy of disgorgement, under the governing legal standard recognized by most courts at the time of settlements and adopted by this Court before *Actavis*.  Admittedly without authority under its own policy statement to pursue disgorgement, the FTC has continually disclaimed disgorgement as one of the remedies it seeks in this case.

Now that the FTC's injunctive claims are moot, however, the FTC has reversed course, and proceeded to advance a disgorgement claim to recover Cephalon's past profits for the years 2007 through 2012—the very period during which it was repeatedly disclaiming a disgorgement

---

[1] Declaration of Mark A. Ford in Supp. of Cephalon Inc.'s Mot. to Preclude the FTC's Disgorgement Claim, January 28, 2015 ("Ford Decl.") Ex. 1 (Tr. of Proceedings Held on April 22, 2010 [Dkt. 71] (June 2, 2010)), at 61:8-14.

[2] Ford Decl. Ex. 2 (Tr. of Oral Arg. on Mot. to Dismiss Held on October 21, 2009 [Dkt. 51] (Oct. 29, 2009)), at 42:23-43:6.

remedy.

The Court should not permit the FTC to reverse course and seek this new remedy. Not only is the FTC's disgorgement remedy inappropriate given its years of contrary representations to this Court, principles of equity, and the FTC's own policy statement in effect at the time, but the FTC lacks statutory authority to seek disgorgement in the first place. The statute under which the FTC has brought this case—Section 13(b) of the FTC Act—does not permit the FTC to seek disgorgement as a matter of law. Indeed, the statute's plain terms permit the FTC to seek (and the court to award) only injunctions, and make no reference to other equitable relief. Indeed, Section 13(b) contrasts dramatically with Section 19, which was passed only two years later and expressly permits monetary relief in certain FTC actions not applicable here. Although other courts outside of this Circuit have permitted the FTC to seek disgorgement under the statute, recent Supreme Court decisions clarifying the distinction between injunctive relief and other equitable relief—including disgorgement—have called these decisions into question. In sum, the text, structure, and legislative history of Section 13(b) show that disgorgement is not a remedy available to the FTC in this case.

This motion presents an issue appropriate for the Court's resolution at this time. The FTC's statutory authority to seek disgorgement is a legal question suited for resolution now, and the FTC cannot point to any evidence to be adduced at trial that could counter the equitable considerations compelling rejection of its disgorgement claim. The Court's decision on this motion will fundamentally shape any trial of the FTC claim against Cephalon: it will impact the type of testimony that is needed, particularly expert testimony, and will significantly influence the parties' presentations of their respective positions. For these reasons, the motion should be granted.

## II.    BACKGROUND

### A.    2003 FTC Policy on Monetary Remedies

In August 2003, after notice and comment, the FTC released a Policy Statement specifying the circumstances under which the Commission would consider pursuit of monetary remedies in competition cases.   In that Statement, the Commission made clear that it would "seek disgorgement and restitution in exceptional cases" only.[3]  The Commission stated it would seek monetary relief only for "clear violation[s]" of law; that is "when, based on existing precedent, a reasonable party should expect that the conduct … would likely be found to be illegal."[4]   In addition, the Commission stated that disgorgement would be sought only "when private actions likely will not remove the total unjust enrichment from a violation."[5]   The Commission stressed that it "is sensitive to the interest in avoiding duplicative recoveries by injured persons or 'excessive' multiple payments by defendants for the same injury."[6]

### B.    The Provigil Settlements and Private Litigation

Between December 2005 and February 2006, Cephalon separately settled Provigil patent infringement claims with Teva, Ranbaxy, Mylan, and Barr.   At that time, and for years afterward, the "scope of the patent" test, first articulated by the Eleventh Circuit in 2003, was the prevailing antitrust standard applied to Hatch-Waxman settlements.   *See Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1310-12 (11th Cir. 2003).   Indeed, in the months leading up to the Provigil Settlements, the Eleventh Circuit vacated the FTC's decision in the Schering-Plough matter which had applied a broader "rule of reason" standard to settlements between Schering-Plough and two generic companies.   *Schering-Plough Corp. v. FTC*, 402 F.3d 1056,

---

[3] FTC, Policy Statement on Monetary Equitable Remedies in Competition Cases ("Policy Statement"), 68 Fed. Reg. 45,820, 45,821 (Aug, 4, 2003).
[4] *Id*.
[5] *Id*.
[6] *Id.*

1065-66 (11th Cir. 2005).  In November 2005, about one month before the first of the Provigil Settlements, the Second Circuit also adopted the scope-of-the-patent test.  *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187 (2d Cir. 2006) (amending Nov. 2, 2005 decision).

In 2006, shortly after the Provigil Settlements, the private plaintiffs' groups filed their complaints seeking antitrust damages claims in this Court.  Each complaint sought multiple damages for injuries allegedly caused by delayed generic entry due to the Provigil Settlements.[7]

### C.     The FTC Provigil Case

In February 2008, nearly two years after the first of the private claims were filed, the FTC filed a "Complaint for Injunctive Relief" against Cephalon.  *See* Compl. [Dkt. 1], *FTC v. Cephalon, Inc.*, No. 08-cv-244 (D.D.C. Feb. 13, 2008) ("Compl.").  The agency challenged each of the Provigil Settlements under Section 5(a) of the FTC Act.  In its original complaint, and in a subsequent amended complaint, the agency sought two injunctions under Section 13(b) of the FTC Act: (1) an injunction preventing Cephalon from maintaining or enforcing its agreements with the Generic Defendants, and (2) an injunction preventing Cephalon from engaging in similar agreements in the future.  Compl. at 27; First Am. Compl. [Dkt. 40], *FTC v. Cephalon, Inc.*, No. 08-cv-2141 (E.D. Pa. Aug. 12, 2009) ("Am. Compl."), at 40; *see also* Pl. FTC's Status Conf. Mem. [Dkt. 33] (June 19, 2009), at 1 ("This antitrust action seeks injunctive relief and is brought pursuant to Section 13(b) of the Federal Trade Commission Act").  The Commission did not include a claim for disgorgement or any other monetary remedy among its prayers for relief.

The FTC's failure to request disgorgement in its complaint was no accident or oversight.[8]  Seeking disgorgement in these circumstances would have been entirely at odds with the

---

[7] *See* Section III.B.3 *infra*.

[8] The FTC's most recent "reverse payment" case, in stark contrast, specifically seeks monetary remedies.  *See* Compl., *FTC v. Abbvie, Inc., et al.*, No. 14-cv-5151 (E.D. Pa. Sept. 8, 2014), at 40 (expressly requesting "restitution or disgorgement").

4

principles articulated in the FTC's 2003 Policy Statement, as any violation was far from "clear" and any monetary remedy would have been duplicative of the private damages claims. Over the course of the litigation, the FTC repeatedly stressed that it was not seeking any monetary remedy. At the very outset of the case, the FTC confirmed that it sought only to accelerate generic entry of Provigil—in an effort to prevent the case from being transferred to this district, where private plaintiffs had already brought suits for damages. *See* Mem. in Opp. to Mot. to Transfer Case [Dkt. 8], *FTC v. Cephalon, Inc.*, No. 08-cv-244 (D.D.C. Mar. 6, 2008). For example, it made clear that the "calculation of damages" was one of "numerous issues **unique to the private damages actions**." *Id.* at 8 (emphasis added); *see also id.* at 2 ("The FTC's complaint seeks to **enjoin** an ongoing violation of the FTC Act" (emphasis added)). The FTC reiterated this view numerous times after the case was transferred. *See, e.g.*, Pl. FTC's Status Conf. Mem. [Dkt. 33] (June 19, 2009), at 3 (arguing that "the nature and extent of damages" were issues only in the "additional claims" brought by the private plaintiffs).

The FTC could not have been clearer in disclaiming monetary relief and in acknowledging that it lacked authority to do so. As it explained at an April 22, 2010 status conference:

> The FTC, throughout this case, has been seeking to open up that market [for Provigil] sooner [than April 2012]. *We're not seeking damages. We don't have the authority to do that. We're not seeking any kind of monetary relief. We're seeking only an injunction* and the injunctive relief we're seeking is to open up that market sooner for generic competition than what these parties agreed to.

Ford Decl. Ex. 1 at 68:2-8 (emphasis added); *accord* Ford Decl. Ex. 2 at 42:23-43:6 (stressing that the FTC was "*not* here to collect money") (emphasis added).

### D.        The FTC's Reversal Of Position

Following the launch of generic modafinil in early 2012, the FTC suddenly reversed course.  A few months after generic modafinil entry, the FTC abruptly withdrew, without notice and comment, and over a vigorous dissent, its then nine-year-old policy on disgorgement and restitution in competition cases.  The Commission thereafter sought retroactively to apply its broader disgorgement strategy against Cephalon.  At a status conference in 2013, the FTC began its effort to jettison its prior clear position, stating that it "would also … potentially be looking for some redress of the consumer harm that's been caused by the years and years of delayed generic entry."  Ford Decl. Ex. 3, Tr. of Proceedings Held on 7/11/2013 [Dkt. 203] (July 16, 2013), at 46:22-24.  It confirmed in July 2013 that it indeed had reversed field and had determined to seek "monetary equitable remedies."  Proposed Final Pretrial Sched. Order [Dkt. 205] (July 31, 2013), at 4, 5, 10.

On December 20, 2013, the FTC served a report from Dr. Roger Noll offering unjust enrichment estimates under alternative scenarios  for a period running from 2007 or 2008 through March 2012.[9]

### E.        Motion to Dismiss Decision

Given that generic entry essentially mooted the FTC's requested injunctive relief, Cephalon moved to dismiss the FTC's complaint as moot.  *See* Mot. to Dismiss for Lack of Jurisdiction [Dkt. 219] (Sept. 20, 2013).  On July 29, 2014, this Court denied the motion.  *See* Mem. Op. [Dkt. 322] (July 29, 2014), at 2 n.2.  This Court explained that "Cephalon may or may not be right that the FTC is not entitled to any of the relief it currently seeks," such as

---

[9] *See* Declaration of Yin Zhou in Supp. of Defs.' Joint Mot. to Exclude Pls.' Experts Drs. Hartman, Leffler, Leitzinger, and Noll on Damages Ops., April 4, 2014, Dkt. No. 628 ("Zhou Decl."), Ex. 17 (Corrected Supplemental Expert Report of Roger G. Noll, December 30, 2013) at Exs. 7A and 7B.

disgorgement, but that this was a question about the merits, not subject-matter jurisdiction.  *Id.*

This motion addresses the disgorgement remedy on the merits and demonstrates that such a remedy should not be permitted.  *See Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1323-24 (11th Cir. 2010) (affirming grant of motion precluding disgorgement remedy); *DeSanto v. Rowan Univ.*, 224 F. Supp. 2d 819, 824-26 (D.N.J. 2002) (granting motion to preclude equitable remedy); *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 453 (S.D.N.Y. 2006) (same); *In re Mirabilis Ventures, Inc.*, No. 6:09-cv-271, 2011 WL 2516881, at *2 (M.D. Fla. June 23, 2011) (granting motion to preclude disgorgement claim for failing to raise it in complaint).

## III.   ARGUMENT

The FTC's eleventh-hour request for disgorgement should be stricken as a matter of law and equity.  ***First***, the FTC lacks statutory authority to seek "equitable monetary relief" under Section 13(b) of the FTC Act.  The plain text of Section 13(b) speaks only of temporary restraining orders and permanent injunctions and says nothing about broader equitable remedies.  ***Second***, even assuming *arguendo* that the FTC can seek disgorgement in *some* cases, it should not be permitted as a matter of equity to seek disgorgement in *this* case.

### A.   The Plain Text Of Section 13(b) Of The FTC Act Authorizes Only Prospective Injunctions, Not Disgorgement Or Other Retrospective Monetary Remedies.

It is well-settled that an agency's power to act "is limited to the authority delegated by Congress."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).  Here, the FTC has no authority to seek disgorgement because the relief available under the provision that allows it to bring its claim in this Court—Section 13(b) of the FTC Act—is expressly limited to injunctions, and does not include any additional equitable relief such as disgorgement.

**1.      Section 13(b), Unlike Another Provision Of The FTC Act Passed Only Two Years Later, Does Not Authorize The FTC To Seek Disgorgement.**

Section 13(b), entitled "Temporary restraining orders; preliminary injunctions," provides that when the FTC has reason to believe that a person is violating or is about to violate a law within its jurisdiction, the agency may "bring suit in a district court of the United States ***to enjoin*** any such act or practice."  15 U.S.C. § 53(b) (emphasis added).  Such an action is appropriate only where the FTC concludes that "the ***enjoining*** thereof pending the issuance of a complaint by the Commission … would be in the interest of the public."  *Id.* (emphasis added).  And in a further limited set of "proper cases," the FTC "may seek, and after proper proof, the court may issue, a ***permanent injunction***."  *Id.* (emphasis added).   The statute does not mention disgorgement or any other equitable relief.

That omission is critical.  Courts may not "read an absent word into the statute" and thus expand its scope.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004).  Section 13(b), which says nothing about "equitable monetary relief," or any form of relief other than a permanent injunction, is thus "as significant for what it omits as for what it says."  *See In re TMI*, 67 F.3d 1119, 1123 (3d Cir. 1995) ("[T]he doctrine of *inclusio unius est exclusio alterius* … informs a court to exclude from operation those items not included in a list of elements that are given effect expressly by the statutory language") (internal quotation marks omitted).   Nor may courts construe "injunction" to include disgorgement and other equitable relief.   "Injunctive relief constitutes a distinct type of equitable relief; it is not an umbrella term that encompasses restitution or disgorgement."   *Landstar*, 622 F.3d at 1324; *Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 545 (W.D. Mo. 2002) ("Although disgorgement is an equitable remedy, it does not qualify as injunctive relief."), *aff'd*, 339 F.3d 1001 (8th Cir.

2003); *Mervyn v. Nelson Westerberg, Inc.*, No. 11 C 6594, 2012 WL 6568338, at *4 (N.D. Ill. Dec. 17, 2012) ("'Injunctive relief' does not mean 'restitution,' 'disgorgement,' or 'imposition of a constructive trust.'").  Indeed, the Supreme Court recently reaffirmed that "injunctive relief" is not coextensive with "equitable relief."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2560 (2011).  In *Dukes*, the Court explained that Federal Rule of Civil Procedure 23(b)(2), which authorizes a class only to obtain class-wide "injunctive relief or corresponding declaratory relief," "does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments."  *Id.*

The omission of any reference to monetary remedies (or any relief beyond an injunction) was deliberate.  Congress passed Section 13(b) in 1973, after extensive debate.  Peter C. Ward, *Restitution for Consumers Under the Federal Trade Commission Act: Good Intentions or Congressional Intentions?*, 41 AM. U. L. REV. 1139, 1174-75 n.195 (1992) ("Ward").  An initial draft of the bill would have allowed the FTC to seek disgorgement and many other forms of relief upon violation of an administrative cease-and-desist order, including "rescission or reformation of contracts, the refund of money or return of property, public notification of the violation, and the payment of damages."  S. 986, 92d Cong. § 203 (1971).  Some senators objected to the provision allowing monetary remedies, fearing that such remedies would impose liability on businesses that did not know they were violating the law.  Ward, at 1180-81.  That bill died; subsequent legislation provided for injunctive relief only, and passed without significant debate.  *Id.* at 1174, 1178.  As enacted, Section 13(b) provided that:  "[T]he Commission … may bring suit in a district court of the United States to *enjoin* any such act or practice. … Provided further, [t]hat in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent *injunction*."  15 U.S.C. § 53(b) (emphasis modified).

And "[w]ith regard to the preliminary relief provision … the legislative history does not suggest that Congress expected that provision to authorize the awarding of restitution to those injured. Its purpose was simply to avoid future injury once the FTC had, by the issuance of a complaint, blown the whistle on suspect conduct."  Ward, at 1178.

Congress's deliberate decision to omit a disgorgement remedy from Section 13(b) is underscored by its decision to supplement the FTC's authority just two years later by passing Section 19 of the FTC Act, a separate provision that specifically gave the FTC authority to seek monetary relief and civil penalties in a limited set of circumstances not applicable here.  Section 19 authorizes the FTC to bring a civil action when a person engages in, for example, a "dishonest or fraudulent" act after the agency has already issued a cease-and-desist order.  15 U.S.C. § 57b(a)(2).  If the agency can prove that a "reasonable man would have known under the circumstances" that the act was "dishonest or fraudulent," the court "shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons." *Id.* § 57b(b).  Paralleling language that had been considered but rejected in connection with what became Section 13(b) two years earlier, the possible relief expressly includes "rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice."  *Id.*; *see also id.* § 45(m)(1)(B) (Section 5(m)(1)(B) of the FTC Act, which authorizes courts to impose civil penalties on knowing wrongdoers).

Section 19 reflects a legislative determination that monetary relief and civil penalties are appropriate only where the violator was clearly on notice, and demonstrates that Congress did not intend such a draconian remedy to be available in suits under Section 13(b) for more general violations of the FTC Act.  *See* Ward, at 1190-91.  "Where Congress includes particular

language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (brackets and quotations omitted); *see also Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Holding that the FTC has authority to seek disgorgement would require a finding that, despite its clear rejection of broader remedies in Section 13(b), and the allowance of such remedies in narrower circumstances in a different provision of the FTC Act, Congress nonetheless intended to authorize the broader remedies *sub silentio*. But "Congress … does not, one might say, hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), especially when only two years later it provides a home for the elephant in a different part of the statute. In reality, Congress purposefully omitted civil penalties and monetary relief when it passed Section 13(b)—and later authorized them only for a narrower set of actions brought under Section 19 and Section 5(m)(1)(B).

Accordingly, the plain language of the remedial provisions in the FTC Act as well as the legislative history make clear that Section 13(b) authorizes the agency to pursue and the courts to grant prospective, injunctive relief only.

> **2.      Congress's Decision To Expressly Limit Available Relief To Injunctions Precludes This Court From Ordering Disgorgement Under Its Inherent Equitable Powers.**

Because Section 13(b) does not expressly authorize broader equitable relief such as disgorgement, the FTC must contend that this Court can nevertheless grant such relief pursuant to its inherent equitable powers. Although this is an argument that the FTC has convinced some other courts to adopt, the Third Circuit has yet to rule on the availability of disgorgement under

13(b),[10] and the analysis that has led other courts to this conclusion is flawed, at odds with Third Circuit precedent, and should not be adopted by this Court.

The courts that have addressed the issue and permitted the FTC to seek monetary remedies under Section 13(b) have relied on the Supreme Court's 1946 decision in *Porter v. Warner Holding*, 328 U.S. 395 (1946), and its 1960 decision in *Mitchell v. Robert de Mario Jewelry, Inc.*, 361 U.S. 288 (1960).[11]  In *Porter*, the Supreme Court held that "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction."  *Porter*, 328 U.S. at 398.  But the statute addressed by *Porter*, the Emergency Price Control Act of 1942, permitted a court to grant an "injunction, restraining order, *or other order*," and its legislative history, according to the Court, included an "unmistakable acknowledgement" that the statute was not intended to limit the equitable powers of the courts.  *Id.* at 398-401.

Similarly, in *Mitchell*, the Supreme Court held that the provision in the Fair Labor Standards Act empowering courts to "restrain violations" of the act did not limit the courts' traditional equitable authority to award lost wages.  Because the statutory provision in *Mitchell* did not include the catch-all "or other order," the FTC has argued that it expands *Porter*.  But the Court in *Mitchell* analyzed both the statutory language as well as legislative history and Congressional intent (to encourage employees to report violations) and found "no indication"

---

[10] The Third Circuit mentions the issue only briefly in a footnote of one unpublished decision.  *FTC v. Magazine Solutions., LLC*, 432 F. App'x 155, 158 n.2 (3d Cir. 2011) (unpublished).  In that footnote, the Third Circuit held that the argument in that case had been "waived," and noted only in dicta that other courts had held that the FTC could seek disgorgement under Section 13(b).  *Id.*  And the one case the Third Circuit cited was a case the FTC *lost*, meaning there was no cause to decide whether it could seek monetary remedies under § 13(b).  *Id.* (citing *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 n.6 (10th Cir. 2005)).  The FTC regularly cites *United States v. Lane Labs-USA Inc.*, 427 F.3d 219 (3d Cir. 2005), but as discussed below, *Lane Labs* addresses a different statute which is distinguishable from the FTC Act in important respects.

[11] *See supra* n.13.

that Congress sought to preclude lost wages awards; indeed, the Court cited a conference report as evidence that Congress understood the section permitted payment of lost wages as a remedy. 361 U.S. at 294-95 & n.5.

Courts allowing disgorgement under 13(b) have mistakenly read *Porter* and *Mitchell* to require an explicit statutory disclaimer of certain remedies before construing a statutory grant as limiting the district court's authority.[12]  But recent Supreme Court and Third Circuit precedent makes clear that this interpretation is not valid.  In *Meghrig v. KFC Western, Inc.*, the Supreme Court refused to interpret a provision of the Resource Conservation and Recovery Act ("RCRA") authorizing a district court "to restrain any person … , to order such person to take such other action as may be necessary, or both" as allowing a retrospective monetary remedy based on the court's inherent equitable powers—even without an express disclaimer.  516 U.S. 479, 484-85 (1996) (emphasis and internal quotations omitted).  The Supreme Court explicitly rejected the Government's reliance on *Porter* for the proposition that "district courts retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress."  *Id.* at 487.  Rather, *Meghrig* explained that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Id.* at 488 (internal quotation marks omitted).  Thus, the Court held that because the plain terms of the RCRA permitted only prospective relief, the district court had no authority to grant broader equitable relief, including retrospective monetary relief.  *Id.*  Importantly, the Court in *Meghrig* contrasted the RCRA with a related statute (CERCLA) passed several years earlier that explicitly included the type of monetary relief not included in RCRA.  *Id.* at 485 ("Congress thus demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to

---

[12] *See supra* n.11.

define the remedies under RCRA does not provide that remedy."). Not *one* of the cases holding that the FTC can recover monetary remedies under 13(b) has even cited, much less discussed, *Meghrig*. Rather, the cases cite *Porter* and to pre-*Meghrig* cases that cite *Porter*, without any acknowledgement of the Supreme Court's limitation of *Porter* in *Meghrig*.[13]

The Third Circuit likewise has held that a district court's inherent equitable powers are constrained when Congress expressly authorizes only discrete, prospective remedies. In *United States v. EME Homer City Generation, L.P.*, the Third Circuit rejected the EPA's argument that the district court could order injunctive relief for past violations based on a Clean Air Act provision authorizing it "to restrain such violation, to require compliance, to assess such civil penalty, to collect [certain] fees owed the United States … , and to award any other appropriate relief." 727 F.3d 274, 292 (3d Cir. 2013) (internal quotation omitted). Despite the seemingly broad catch-all power to "award any other appropriate relief," the Third Circuit held that this provision authorized only prospective relief, "consistent with the specific forward-looking injunctive remedies that precede it" in the list and the statute's other prospective enforcement provisions. *Id.* at 293-94. As the Third Circuit made clear, district courts are not free to award retrospective equitable relief when Congress has expressly authorized only prospective remedies. *Id.* Other courts have similarly rejected the argument that under *Porter* "courts always retain their full equitable powers unless a statute expressly removes them" and held that a court has no inherent equitable powers where a statute "list[s] only injunctive relief to the exclusion of other equitable remedies." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.*, 632 F.3d 1111, 1121 (9th Cir. 2011); *see also, e.g., Landstar*, 622 F.3d at 1324 (holding that a statute

---

[13] *See e.g., FTC v. Bronson Partners, LLC*, 654 F.3d 359, 367 (2d Cir. 2011) (citing *Porter*); *FTC v. Febre*, 128 F.3d 530 (7th Cir. 1997) (citing, without analysis, only pre-*Meghrig* cases); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468-70 (11th Cir. 1996) (citing *Porter* and pre-*Meghrig* cases); *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314 (8th Cir. 1991) (predating *Meghrig* and citing *Porter*); *FTC v. Mylan Labs., Inc.*, 62 F. Supp. 2d 25, 36-37 (D.D.C. 1999) (citing *Porter*).

14

authorizing "injunctive relief" does not encompass restitution or disgorgement); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 331 (4th Cir. 2006) (rejecting argument that class certification was appropriate based on class-wide restitution because "[t]he text of Rule 23(b)(2) says nothing whatsoever about equitable relief, but authorizes class treatment only when the plaintiff seeks predominantly 'injunctive' or 'declaratory' relief" and "if the Rule's drafters had intended the Rule to extend to all forms of equitable relief, the text of the Rule would say so"); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Inway, Inc.*, No. 02-1005, 2007 WL 473995, at *4 (M.D. Fla. Jan. 12, 2007) ("Plaintiffs also suggest that 'injunctive relief' includ[es] 'restitution and disgorgement.' Such a position is irreconcilable with basic principles of equity law."), *aff'd*, 622 F.3d 1307 (11th Cir. 2010); *Avondale Fed. Sav. Bank v. Amoco Oil Co.*, 170 F.3d 692, 694 (7th Cir. 1999) ("Congress deliberately limited RCRA's remedies to injunctive relief … . Neither *Meghrig* nor RCRA can be read to allow a party to recover cleanup costs."). The D.C. Circuit likewise has held that a provision of the Racketeer Influenced and Corrupt Organizations Act that is "limited to forward-looking remedies that are aimed at future violations" excludes the "quintessentially backward-looking remedy" of disgorgement. *United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1198 (D.C. Cir. 2005) (interpreting 18 U.S.C. § 1964(a)).

In this case, the text, structure and legislative history of the FTC Act all lead to the "necessary and inescapable inference" that Congress intended to limit relief under Section 13(b) to injunctive relief. *See Porter*, 328 U.S. at 398; *NYLife Distribs., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 380-81 (3d Cir. 1995) (courts should consider "the overall structure and language, purpose and legislative history" to determine whether Congress "inten[ded] to deny the courts their traditional equitable discretion in deciding matters of equitable relief").

The congressional grant in Section 13(b) is even *narrower* than the grants in *Meghrig* and *Homer City*.   Section 13(b) authorizes only "injunctive relief."   It does not contain broad language permitting the court to "prevent" or "restrain" violations, as in *Mehrig*, and it does not contain a provision authorizing "any other appropriate relief," as in *Homer City*.   Rather, as in *Swift*, the statute "list[s] only injunctive relief to the exclusion of other equitable remedies." *Swift Transp.*, 632 F.3d at 1121; *see also Dukes*, 131 S. Ct. at 2560.   Given this deliberate choice to reject broader remedies (which were proposed) and adopt only prospective, injunctive relief, the Court has no power to grant disgorgement as a remedy.   *Mehrig*, 516 U.S. at 488.

Indeed, Section 19 would have been unnecessary if Section 13(b) had been intended and understood already to authorize the FTC and courts to seek and the courts to grant any equitable remedy for an ongoing or threatened violation of the FTC Act.   This broad reading of Section 13(d) would therefore violate the "canon against interpreting any statutory provision in a manner that would render another provision superfluous." *Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010) ("This principle, of course, applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times."); *Meghrig*, 516 U.S. at 485 (CERCLA's specific grant of reimbursement remedy demonstrated Congressional intent not to allow such relief under RCRA, similar statute enacted several years earlier than CERCLA).

In its opposition to Cephalon's motion to dismiss, the FTC cited *United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 223, 231 (3d Cir. 2005), as lending support to its position that 13(b) authorized disgorgement.   But in *Lane Labs*, the Third Circuit considered the remedies available under the federal Food, Drug, and Cosmetic Act, not the FTC Act.   There, the statute authorized courts broadly to "restrain violations" of the Act.   According to the court, the FDCA's grant included the power to award equitable monetary relief, although candidly acknowledging

16

the issue was a "close call."  427 F.3d at 223, 231.  Section 13(b), however, warrants a different result.  First, the Third Circuit in *Lane Labs* reasoned that "[r]estitution … serves a deterrent function embodied in the district court's authority to 'restrain violations of section 331.'"  *Id.* at 229.  That reasoning is inapplicable to Section 13(b), which contains only the specific authorization to grant "permanent injunctions" which courts (including the Third Circuit) have repeatedly held does not encompass other forms of equitable relief.  *See supra.*  Moreover, as discussed above, the statutory language, context, and history of 13(b) all demonstrate clear Congressional intent to narrow the scope of available relief, further distinguishing 13(b) from the provision of the FDCA addressed in *Lane Labs*.[14]

## B. The Court Should Preclude the FTC's Disgorgement Claim As A Matter of Equity.

Even assuming *arguendo* that Section 13(b) permits the FTC to seek disgorgement in *some* cases, the Court should not permit the FTC to seek disgorgement in *this* case.  **First**, the FTC's request for disgorgement comes after years of representing to this Court that it was not seeking any monetary relief.  This Court should decline to exercise its discretionary equitable powers to allow the FTC to pursue the very relief it has disclaimed all along and does not seek in its complaint.  **Second**, requiring a return of past profits would be proper only in cases where the defendant committed what it knew to be a clear violation of the law.  The FTC cannot make that claim here given its concession, written in a letter to this Court, that it could not prevail under the legal standard prevailing at the time it filed its complaint.  Indeed, even after the Supreme

---

[14] Indeed, the court in *Lane Labs* distinguished *Meghrig* by pointing out the significance of the later environmental statute Congress passed (CERCLA) that provided the specific retrospective monetary remedy government asked the court to infer in RCRA.  *Lane Labs*, 427 F.3d at 230 ("There would have been no need for Congress to enumerate this specific remedy in CERCLA if the power 'to order such action as many be necessary' already encompassed it").  There was no analogous related statute (or contrasting provision of the same statute) in *Lane Labs*.  Thus, *Meghrig* is fully applicable to the situation here, where the specific grant of the power to seek monetary remedies in Section 19 shows that Congress did not intend such power to be within the scope of Section 13(b).

Court's decision in *Actavis*, the FTC did not move for summary judgment against Cephalon in this case. ***Third***, there is no indication that the private plaintiffs are unable to obtain complete relief on their own, making any disgorgement remedy sought by the FTC duplicative.

### 1. The FTC Has Consistently Represented That It Seeks Only Prospective Injunctive Relief In This Case.

The FTC's conduct in this litigation is alone sufficient grounds to reject its about-face. It is well established that "the government, when it seeks an equitable remedy, 'is no more immune to the general principles of equity than any other litigant.'" *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 879 (1st Cir. 1995) (quoting *United States v. Second Nat'l Bank*, 502 F.2d 535, 548 (5th Cir. 1974)). As the Third Circuit held, "all remedies that are governed by equitable principles," must be pursued by the government "with reasonable promptness." *United States v. Olds*, 426 F.2d 562, 565-66 (3d Cir. 1970) (stating that equity requires all remedies to be "pursued with reasonable dispatch" and holding that the government's three-month delay before seeking mandamus was "untimely").

Based on these equitable principles, the FTC should not be permitted to disavow any monetary claim for years and then recant simply because it became strategically convenient to do so. Indeed, the FTC could not have been clearer throughout this case in disclaiming any attempt to recover monetary relief. During oral argument on Cephalon's motion to dismiss, the FTC stressed that it was "***not here to collect money.***" Ford Decl. Ex. 2 at 42:23-43:6 (emphasis added). It reiterated the same point to the Court at an April 22, 2010 status conference:

> The FTC throughout this case has been seeking to open up that market [for Provigil] sooner [than April 2012]. ***We're not seeking damages. We don't have the authority to do that. We're not seeking any kind of monetary relief. We're seeking only an injunction*** and the injunctive relief we're seeking is to open up that market sooner for generic competition than what these parties agreed to.

18

Ford Decl. Ex. 1 at 61:8-14 (emphasis added). These representations were consistent with not only the FTC's multiple representations to the Court, but also the FTC's complaint, which does not seek disgorgement or any other monetary remedy. *See* Compl. at 26-27; Am. Compl. at 27. By contrast, the FTC has expressly requested disgorgement in the complaint in a number of other cases. *See, e.g.*, Ford Decl. Ex. 4 (Compl., *FTC v. Abbvie, Inc.*, No. 14-cv-5151, (E.D. Pa. Sept. 8, 2014)) at 40 (expressly requesting "restitution or disgorgement"); Ford Decl. Ex. 5 (Compl., *FTC v. Bronson Partners, LLC*, No. 3:04-CV-1866 (D. Conn. Nov. 4, 2004)) at ¶ 1 (seeking "a permanent injunction, rescission of contracts and restitution, disgorgement of ill-gotten gains, and other equitable relief"); Ford Decl. Ex. 6 (Compl., *FTC v. Magazine Solutions LLC*, No. 2:07-CV-692 (DWA) (W.D. Pa. May 23, 2007)) at ¶ 1 (same).

After generic modafinil entry rendered moot the FTC's principal prayer for relief, the Commission sought to recast its claim against Cephalon, repudiating its prior representations, and seeking to inject a disgorgement claim into the case. The FTC should not be permitted to engage in such an eleventh-hour about-face simply because the relief it actually requested cannot be granted. In *Texaco*, the government similarly not only "waited three years" to assert a claim for monetary remedies, but twice during that period asserted that restitution of "profits would not later be demanded." *Texaco*, 60 F.3d at 879, 881. The court observed that the government subsequently decided to pursue monetary relief "as a stratagem to enhance [its] negotiating position." *Id.* at 880. On these grounds, the court properly found the government guilty of "unreasonable delay" and held the government to its prior representations that it would not seek disgorgement. *Id.* Courts routinely bar litigants from reversing course at the eleventh hour in order to "protect the judicial process by preventing parties from 'deliberately changing positions according to the exigencies of the moment.'" *In re Armstrong World Indus.*, 432 F.3d 507, 517

(3d Cir. 2005) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).  Here, Cephalon litigated the entire case—including years of fact discovery—with the clear understanding that the FTC sought only injunctive relief.  It would be inequitable to change the rules of the game after the fact.

Moreover, the fact that the FTC took so long to assert disgorgement in this case betrays any claim that consumers need additional redress.  The profits which the FTC now seeks to disgorge were being earned by Cephalon during the very years when the FTC was renouncing pursuit of any monetary remedy.  Moreover, the FTC did not seek a preliminary injunction seeking to end the flow of allegedly "unjust profits" when it brought suit in 2008, or thereafter.  The FTC's undue delay in seeking disgorgement until its suit became moot thus undermines its entitlement to it.  *Texaco*, 60 F.3d at 879, 881.  The FTC should be held to its word.

### 2.      As The FTC Has Conceded, There Was No Clear Violation Of The Law At The Time Of The Challenged Settlements.

It also would be inequitable to permit the FTC to seek disgorgement where the FTC itself has conceded that this was no "clear violation" at the time of the conduct at issue.  In this case, not only was there no clear violation of law under the scope of the patent test prevailing at the time of the Settlements, the FTC thereafter explicitly conceded that ***it could not even win this case*** under that legal standard.  In November 2009, the FTC submitted a letter to the Court responding to three questions the Court raised under the assumption that the Court would apply the "scope of the patent" test—the then-prevailing legal standard governing Hatch-Waxman patent settlements that the Court ultimately adopted in its March 2010 motion to dismiss ruling. Letter from Markus H. Meier to the Hon. Mitchell S. Goldberg [Dkt. 57] (Nov. 30, 2009) ("FTC 2009 Letter"); *see King Drug Co. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 529 (E.D. Pa. 2010) ("the scope of the patent framework … appears to strike the proper balance between competing

20

patent and antitrust principles"). In response to a question from the Court regarding whether the patent settlements were or were not within the "scope of the patent," the FTC wrote: "If the Court adopts the [scope of the patent] standard articulated by the Second and Federal Circuits at the pleadings stage …, the FTC's complaint … **would fail to state a claim and should be dismissed**." FTC 2009 Letter at 3 (emphasis added). Later in the same letter, in response to a question from the Court regarding whether "there is applicable precedent on this issue" and "how the facts of the case fit within that precedent," the FTC responded: "Should the Court nonetheless decide at this early juncture to adopt the [scope of the patent] standard, **the FTC's complaint would fail to state a claim and should be dismissed**." *Id.* at 4-5 (emphasis added).[15]

This is important because both the FTC and the courts have limited disgorgement as a remedy upon the showing of a "clear violation" of the law, that is, one where based on existing precedent, the party should have known the conduct was illegal. The underlying purpose of disgorgement is, after all, to strip a defendant of "wrongful gain," and therefore the remedy is generally limited to instances of "conscious wrongdoing." *See* Restatement (Third) of Restitution and Unjust Enrichment § 3 & cmt. a (2011) ("Liability to disgorge profits is ordinarily limited to cases of what this Restatement calls 'conscious wrongdoing.'"). Thus

---

[15] If anything, subsequent developments in the law underscore the continuing uncertainty as to when the settlement of Hatch-Waxman patent litigation gives rise to antitrust liability. The Supreme Court's decision in *FTC v. Actavis* worked a complete change in the standards for evaluating those claims. *See, e.g.*, Amanda P. Reeves, *Muddying the Settlement Waters: Open Questions and Unintended Consequences Following FTC v. Actavis*, 28 Antitrust 9, 9 (2013) ("[T]he immediate reaction was that there had been a tectonic shift in the Hatch-Waxman landscape …. [T]he Court's decision … provides more questions than answers."). Courts across the country are still grappling with fundamental questions about how to conduct the antitrust analysis under the rule-of-reason standard set out by the Supreme Court—unsettled, difficult questions about the scope of the threshold inquiry, the type of "payment" that can trigger scrutiny, the measurement of the payment's size, and other related issues. *See, e.g.*, *In re Lipitor Antitrust Litig.*, No. 12-cv-2389, 2014 WL 4543502, at *18-21 (D.N.J. Sept. 12, 2014); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472, 2014 WL 4368924, at *7-10 (D.R.I. Sept. 4, 2014); *In re Lamictal Direct Purchaser Antitrust Litig.*, 18 F. Supp. 3d 560, 566-69 (D.N.J. Jan. 24, 2014) (currently on appeal). Some of those disputed issues are currently before the Court. *See, e.g.*, Apr. 7, 2014 Motion for Summ. J. on Pls.' Challenges to the Settlement Agreements [Dkt. 626, No. 06-1797]. In the Court's own estimation, "[n]othing in this case is straight forward." Ford Decl. Ex. 8 (Tr. of Hearing held on January 23, 2014 [Dkt. 262]) at 166.

courts that have permitted the FTC to seek broader equitable remedies in "proper cases" have generally required a showing that the defendant committed an obvious violation of the FTC Act. *See, e.g.*, *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1028 (7th Cir. 1988) ("[I]t is quite clear that Congress at least expected that the FTC could rely on [Section 13(b)'s "proper cases" requirement] when it sought to halt a ***straightforward*** violation of section 5 that required ***no application*** of the FTC's expertise to a ***novel regulatory issue*** through administrative proceedings.") (emphasis added); *FTC v. Abbott Labs.*, No. 92-1364, 1992 WL 335442, at *2 (D.D.C. Oct. 13, 1992) ("Surely a per se price fixing conspiracy such as that alleged has [already] long been recognized as anti-competitive conduct affecting consumers and no further exercise of the Commission's expertise is required.").[16]

This equitable principle was firmly reflected in the FTC's 2003 Policy Statement in effect at the time the FTC filed its complaint and throughout the years for which it now seeks disgorgement. There, the FTC explicitly acknowledged that it would be inappropriate to seek disgorgement or restitution under Section 13(b) absent a clear violation of law. *See* Policy Statement at 45,821-22. The policy statement explained in detail that a "violation is 'clear' for this purpose when, based on existing precedent, a reasonable party should expect that the conduct at issue would likely be found to be illegal." *Id.* at 45,821. The Commission emphasized that "[c]learness" is "measured ex ante, as of the time the act occurs, and not ex post

---

[16] Thus, it is not surprising that the only statutes permitting the FTC to obtain monetary remedies require clear violations of the Act. *See* 15 U.S.C. § 57b(a)(2) (violation of cease-and-desist order concerning act or practice that "a reasonable man would have known under the circumstances was dishonest or fraudulent"); *see also id.* § 45m(1)(B) (civil penalties based on violation of cease-and-desist order with "actual knowledge that such act or practice is unfair or deceptive and is unlawful"). *See also infra* Section III.B.2.

with the benefit of hindsight." *Id.*[17]

At the end of the day, the FTC asks this Court to allow it to proceed with a disgorgement claim even though (1) at the time it brought suit (and throughout the period for which it now seeks recovery), it was operating under a policy statement that permitted disgorgement only for "clear violation[s]" of "established precedent," (2) the FTC believed from the outset that not only was there no clear violation under the then-established "scope of the patent" test, but that it in fact would *lose* under that test, and (3) as a consequence, the FTC did not even ask for disgorgement in its complaint.[18]  Such a result would be greatly inequitable.

### 3.   Private Parties Can Obtain Complete Relief.

Nor is there any need for the FTC to seek disgorgement in this case, as any relief to which consumers are entitled can be obtained by the multiple private plaintiffs' groups already seeking damages.  It is inequitable to award disgorgement when the claim is duplicative of damages sought.  *See, e.g., Jablonski v. Riverwalk Holding, Ltd.*, 11-CV-840, 2012 WL 2254257, at *8 (N.D. Ill. June 14, 2012) ("Because the putative class claims seek an award of damages identical to the disgorgement she seeks as equitable relief, her claim for an equitable monetary award is duplicative and the court declines to award it."); *Schwab v. Philip Morris*

---

[17] The fact that the Commission opportunistically withdrew this policy late in the case against Cephalon should make no difference.  *Cf. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30 (1983) ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance.").

[18] In its opposition to Cephalon's motion to dismiss, the FTC argued that Cephalon's alleged antitrust violation was "clear" because the Court found that Cephalon obtained its patent through fraud.  FTC Opp. to Mot. to Dismiss for Lack of Jurisdiction [Dkt. 234] (Nov. 18, 2013), at 18-19.  Of course, in addition to repeatedly disclaiming monetary remedies, the FTC has repeatedly disclaimed any claim of fraud on the patent office.  Ford Decl. Ex. 7 (Pl. FTC's Resp. to Cephalon's First Set of Interrogs., Feb. 14, 2011), at 4; Letter to Judge Goldberg [Dkt. 205] (July 31, 2013), at 8; FTC Mem. in Supp. of Mot. for Preclusion of Patent Issues [Dkt. 218-1] (Sept. 20, 2013), at 6, 7 n.4; FTC's Reply to Mot. for Preclusion of Patent Issues [Dkt. 242] (Dec. 20, 2013), at 5; Ford Decl. Ex. 8 at 36.  The Commission reaffirmed this most recently in its August 2014 letter to the Court in which, in an attempt to secure a separate trial from the private plaintiffs, noted that "[t]he FTC has not alleged a claim of Walker Process fraud[.]" Ford Decl. Ex. 9 (Ltr. M. Meier to Judge Goldberg, Aug. 28, 2014), at 1.  It is axiomatic that a remedy cannot be based on a liability claim never asserted, and all the more so where the remedy sought is one in equity.

*USA, Inc.*, 04-CV-1945, 2005 WL 2303821, at *1 (E.D.N.Y. Sept. 22, 2005 (holding, in RICO case, that "[d]isgorgement of profits would duplicate damages—particularly as trebled—based upon claimed overpayments by plaintiffs and thus would be inequitable"); *see also Commodity Futures Trading Comm'n v. White Pine Trust Corp.*, 04-CV-2093 J (NLS), 2007 WL 1754819, at *9 (S.D. Cal. Apr. 20, 2007) (denying CFTC's request for disgorgement as "redundant" because agency admitted its request was "coterminous with the restitution award, so that the amounts need only be paid once[,]" and "any payment made by … the Corporate Defendant towards its restitution obligation will reduce the outstanding disgorgement obligation by the same amount."). Subjecting Cephalon to liability to both the FTC for disgorgement and the plaintiffs for damages would improperly convert disgorgement to a punitive, rather than remedial, measure. *See S.E.C. v. Lorin*, 869 F. Supp. 1117, 1123-24 (S.D.N.Y. 1994).

In the 2003 Policy Statement, the FTC acknowledged that it would be inappropriate to obtain duplicate recoveries from defendants for the same violation. *See* Policy Statement at 45,823. For these reasons, the FTC made clear that seeking disgorgement would be proper only in a unique situation "where statutes of limitation for, or market disincentives to, private damage actions are likely to leave a violator with some or all of the fruits of its violation" or "when practical or legal difficulties are likely to preclude compensation for those injured by a violation who in equity should be made whole." *Id.* at 45,822.

Here, to the contrary, the FTC's pursuit of disgorgement is clearly duplicative. The private plaintiff groups have been vigorously litigating their damages claims for years, and such claims substantially exceed the Cephalon profits that the FTC seeks to disgorge (assuming a violation can be proven at all). *See* Kimberly Hennings Decl., April 4, 2014, Dkt. No. 631, Ex. F (Expert Rep. of Gregory K. Bell, Ph.D. (Jan. 29, 2014)) at ¶ 31 (summarizing reports of the

plaintiffs' experts). The direct purchaser class plaintiffs have submitted an expert report seeking class-wide damages from June 2006 through August 2012.  *See* Zhou Decl. Ex. 3 (Supp. Rep. of Jeffrey J. Leitzinger, Ph.D., Dec. 20, 2013) at Ex. 4.  A group of pharmacies, who were assigned certain claims of members of the direct purchaser class, separately sought more in damages from June 2006 through July 2013 before settling with Cephalon.  *See* Zhou Decl. Ex. 8 (Supp. Expert Rep. of Keith B. Leffler, Ph.D., Dec. 20, 2013) at ¶ 14.  On top of these, the putative end payor class, bringing certain state law claims, also claim damages from June 2006 through September 2013.  *See* Zhou Decl. Ex. 13 (Supp. Decl. of Raymond S. Hartman, Dec. 20, 2013) at ¶ 4. Moreover, Plaintiffs asserting Sherman Act claims seek treble damages, and many of the state law claims similarly include multiple damages.

Indeed, the FTC itself has stated that any disgorgement it obtains would be most properly be used to resolve the private plaintiffs' cases, effectively conceding the duplicative nature of its remedy.  *See* Ford Decl. Ex. 9 at 2.  This is a quintessential case where the agency's insistence on pursuing monetary relief is both "unnecessary and unwise," Policy Statement at 45,822, and should not be permitted by the Court.[19]

## IV.    CONCLUSION

The FTC seeks monetary relief not authorized by Section 13(b), inconsistent with equitable tenets as recognized in its own Policy Statement in effect at the time of suit, and directly contrary to its multiple representations to this Court.  Because its theory of recovery fails as a matter of law and equity, the Court should preclude the FTC's disgorgement claim.

---

[19] Using a federal claim to recover funds on behalf of indirect purchasers also threatens to undermine and circumvent the policy of Illinois Brick that such parties may not recover for overcharges under federal antitrust law. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 748 (1977).  The FTC's claim for disgorgement walks right through the "door to duplicative recoveries" the Court said it was "unwilling to open."  *See id.* at 731.  It also undermines the Court's reasoning that the antitrust laws are more "effectively enforced by concentrating the full recovery" in direct purchasers' claims for treble damages than in myriad claims by every potential plaintiff.  *Id.* at 735.

Dated: January 28, 2015           Respectfully submitted,

                             *s/ James C. Burling*
                             James C. Burling
                             Peter A. Spaeth
                             Mark A. Ford
                             WILMER CUTLER PICKERING
                               HALE AND DORR LLP
                             60 State Street
                             Boston, MA  02109
                             (617) 526-6000
                             (617) 526-5000  fax

                             John A. Guernsey
                             Nancy J. Gellman
                             CONRAD O'BRIEN PC
                             1500 Market Street, Suite 3900
                             Centre Square, West Tower
                             Philadelphia, PA  19102
                             (215) 864-9600
                             (215) 864-9620 fax

                             *Attorneys for Cephalon, Inc.*