**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | **CIVIL ACTION** |
|  | ) |  |
| *Plaintiff,* | ) | **No. 2:08-cv-2141** |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CEPHALON, INC., | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |

_____

## Plaintiff Federal Trade Commission's Memorandum in Opposition to Cephalon's Motion to Preclude the FTC's Disgorgement Claim

MARKUS H. MEIER
BRADLEY S. ALBERT
ELIZABETH E. HILDER
DANIEL W. BUTRYMOWICZ
MATTHEW B. WEPRIN
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
Tel: (202) 326-3759
Fax: (202) 326-3384
mmeier@ftc.gov

# Table of Contents

Background ........................................................................................................... 2

Argument ............................................................................................................. 7

I.   This Court has authority to order disgorgement for violations of the FTC Act ...................... 7

    A.   Courts have uniformly agreed that Section 13(b) grants district courts the authority to order equitable monetary remedies .................................................. 8

    B.   Cephalon cannot sweep aside unanimous precedents holding that Section 13(b) authorizes equitable monetary relief ................................................................ 11

        1.   The Third Circuit has already rejected Cephalon's reading of *Meghrig* .................. 11

        2.   Cephalon's other cases construed statutes wholly unlike the FTC Act...................... 12

        3.   Section 19 does not limit the remedies available under Section 13(b)...................... 14

II.  Evidence at trial will show that disgorgement is appropriate ................................................. 15

    A.   Cephalon's motion in limine is improper....................................................... 16

    B.   Evidence at trial will show disgorgement is warranted.................................................. 18

        1.   Evidence of Cephalon's violation and related factors support disgorgement ........... 18

        2.   Cephalon's arguments do not establish disgorgement would be inequitable............ 20

## Table of Authorities

**Cases**

*Albermarle Paper Co. v. Moody*, 422 U.S. 405 (1975) .................................................. 21

*Apotex Inc. v. Cephalon, Inc.*, No. 06-cv-2768, 2011 WL 6090696 (E.D. Pa. Nov. 7, 2011), *aff'd*, 500 F. App'x 959 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 825 (Dec. 16, 2013) ............................................................................................... 4, 19, 23

*Atlantic Purchaser, Inc. v. Aircraft Sales, Inc.*, 705 F.2d 712 (4th Cir. 1983) ............................ 22

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508 (D.N.J. 2008) ........................... 17

*Bradley v. Pittsburgh Bd. of Educ.*, 913 F. 2d 1064 (3d Cir. 1990) .......................................... 16

*Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533 (D.C. Cir. 1986) ................................... 24

*CFTC v. Petro Mktg Group, Inc.*, 680 F.2d 573 (9th Cir. 1982) .............................................. 9

*CFTC v. White Pine Trust Corp.*, No. 04-cv-2093, 2007 WL 1754819 (S.D. Cal. Apr. 20, 2007) ................................................................................................................ 24

*Chicago Bridge & Iron Co. v. FTC*, 534 F.3d 410 (5th Cir. 2008) ............................................ 24

*DeSanto v. Rowan Univ.*, 224 F. Supp. 2d 819 (D.N.J. 2002) ................................................. 17

*Francois v. Francois*, 599 F.2d 1286 (3d Cir. 1979) ............................................................ 21

*FTC v. Actavis*, 133 S. Ct. 2223 (2013) ....................................................................... 4, 23

*FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564 (7th Cir. 1989), *cert. denied*, 493 U.S. 954 (1989) ............................................................................................... 7, 9

*FTC v. Bronson Partners*, LLC, 654 F.3d 359 (2d Cir. 2011) ........................................ 7, 14, 18

*FTC v. Direct Mktg. Concepts, Inc.,* 624 F.3d 1 (1st Cir. 2010) .............................................. 7

*FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ................................... 20

*FTC v. Freecom Commc'ns, Inc.,* 401 F.3d 1192 (l0th Cir. 2005) ....................................... 7, 10

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996) ............................................ 7, 10, 19

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982) ................................................... 9, 14

*FTC v. Kennedy*, 574 F. Supp. 2d 714 (S.D. Tex. 2008) ....................................................... 7

*FTC v. Magazine Solutions, LLC*, 432 Fed. App'x 155 (3d. Cir. 2011) .............................. 7, 9, 10

*FTC v. Mylan Labs., Inc.*, 62 F.Supp. 2d 25 (D.C.C. 1999) .................................................... 7

*FTC v. Pantron I Corp.*, 33 F.3d 1088 (9th Cir. 1994), *cert. denied* 514 U.S. 1083 (1995) ............................................................................................................. 7, 16

*FTC v. Ross,* 743 F.3d 886 (4th Cir. 2014), *cert. denied,* 135 S.Ct. 92 (2014) ............................... 7

*FTC v. Sec. Rare Coin & Bullion Corp.,* 931 F.2d 1312 (8th Cir. 1991) ............................ 7, 9, 14

*FTC v. Solar Michigan, Inc.*, 1988-2 Trade Cas. (CCH) ¶ 68,339 (E.D. Mich. 1988)................................................................................................................. 7

*FTC v. Sw. Sunsites, Inc.*, 665 F.2d 711 (5th Cir. 1982) ....................................... 7

*FTC v. Think Achievement Corp.*, 312 F.3d 259 (7th Cir. 2002)................................. 15

*FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988)............................. 24

*Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303 (E.D.N.Y. 2010) .................................. 17

*Hamza v. Saks Fifth Ave., Inc.*, No. 07-cv-5974, 2011 WL 6187078 (S.D.N.Y. Dec. 5, 2011) ................................................................................................. 17

*Hendrian v. Safety-Kleen Sys., Inc.*, No. 08-cv-14371, 2014 WL 117315 (E.D. Mich. Jan. 13, 2014)............................................................................... 17

*Hofferica v. St. Mary Med. Ctr.*, 826 F. Supp. 2d 813 (E.D. Pa. 2011)........................... 21

*Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004)................................. 15

*ICC v. B&T Transp. Co.*, 613 F.2d 1182 (1st Cir 1980)........................................ 9

*In re Armstrong World Indus.*, 432 F.3d 507 (3d Cir. 2005)....................................... 21

*In re Blinds to go Share Purchase Litig.*, 443 F. 3d 1 (1st Cir. 2006)........................... 16

*In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012) ......................................... 4

*In re Mirabilis Ventures, Inc.*, No. 6:09-cv-271, 2011 WL 2516881 (M.D. Fla. June 23, 2011) ................................................................................................. 17

*In re Nat'l Credit Mgmt. Gp., LLC*, 21 F. Supp. 2d 424 (D.N.J. 1998)............................ 7

*Jablonski v. Riverwalk Holding, Ltd.*, No. 11-cv-840, 2012 WL 2254257 (N.D. Ill. June 14, 2012) ........................................................................................ 24

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514 (E.D. Pa. 2010)..................................................................................................... 22

*Kirby v. Dep't of Hous. & Urban Dev.*, 745 F.2d 204 (3d Cir. 1984) ........................... 20

*Louzon v. Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013) ....................................... 17

*Meghrig v. KFC W., Inc.*, 516 U.S. 479 (1996) ................................................. 7, 11, 12

*Miller v. French*, 530 U.S. 327 (2000) ....................................................... 11

*Mitchell v. Robert Demario Jewelry, Inc.*, 361 U.S. 288 (1960) ............................... 8, 9

*N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512 (1982) ............................................ 10

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys, Inc.*, 622 F.3d 1307 (11th Cir. 2010) ........................................................................................................ 17

*Pavone v. Puglisi*, No. 1:08-cv-2389, 2013 WL 245745 (S.D.N.Y. Jan. 23, 2013) .................... 17

*Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) .............................................. 8, 9, 13

*Schwab v. Philip Morris USA, Inc.*, No. 04-cv-1945 2005 WL 2303821 (E.D.N.Y. Sept. 22, 2005) ........................................................................................................ 24

*SEC v. First City Fin. Corp.*, 890 F.2d 1215 (D.C. Cir. 1989) ..................................... 9

*SEC v. Penn Cent. Co.*, 425 F. Supp. 593 (E.D. Pa. 1976) ....................................... 24

*SEC v. Risman*, 7 Fed. App'x 30 (2d Cir. 2001) .................................................. 25

*SEC v. Teo*, 746 F.3d 90 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 675 (2014) .............. 18

*SEC v. Tome*, 833 F.2d 1086 (2d Cir.1987), *cert. denied*, 486 U.S. 1014 (1988) ............ 24

*Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros, Inc.*, 201 F.3d 231 (3d Cir. 1999) ........................................................................................................ 20

*Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d. 429 (S.D.N.Y. 2006) ............................ 17

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995) ........................................................................................................ 22

*United States v Lane Labs-USA, Inc.*, 427 F.3d 219 (3d Cir. 2005) .................. passim

*United States v. EME Homer City Generation, L.P.*, 727 F.3d 274 (3d Cir. 2013) ............ 13

*United States v. Keyspan Corp.*, 763 F. Supp. 2d 633 (S.D.N.Y. 2011) ..................... 9, 20

*United States v. Phillip Morris USA, Inc.*, 396 F.3d 1190 (D.C. Cir. 2005) ................ 13

*United States v. Richlyn Labs., Inc.*, 827 F. Supp. 1145 (E.D. Pa. 1992) .................... 20

*United States v. Rx Depot*, 438 F.3d 1052, 1057 (10th Cir. 2006) ............................ 11

*United States v. Second Nat'l Bank*, 502 F.2d 535 (5th Cir. 1974) ........................... 21

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ....................................... 12

*Williams v. Johnson*, 747 F. Supp. 2d 10 (D.D.C. 2010) ....................................... 17

**Statutes**

15 U.S.C. § 45 ...................................................................................................... 2, 10

15 U.S.C. § 53(b) ............................................................................................. 2, 7, 14

15 U.S.C. § 57b ...................................................................................................... 14

Federal Trade Commission Act Amendments of 1994, Pub. L. No. 103-312, 108 Stat. 1691 (Aug. 26, 1994) ................................................................................ 10

U.S. Safe Web Act of 2006, Pub. L. 109-455, 120 Stat. 3372 (Dec. 22, 2006) ........................... 10

**Rules**

Fed. R. Civ. P. 23(b) ................................................................................................. 12

Fed. R. Civ. P. 54(c) ................................................................................................. 21

**Treatises**

2 P. Areeda & H. Hovenkamp, Antitrust Law .......................................................... 15

Restatement (Third) of Restitution and Unjust Enrichment (2011)............................ 23

**Other Authorities**

S. Rep. No. 103-130 (1993) ....................................................................................... 10

Cephalon knowingly used a fraudulent patent as a pretext to pay its potential generic competitors to stay out of the market for six years. As Cephalon's then-CEO predicted at the time, these illegal agreements garnered the company "$4 billion in sales that no one expected." This enormous financial gain came at the expense of consumers.

Having fully profited from its unlawful scheme, Cephalon now asks this Court (for the second time) to rule—before trial—that it would be "inappropriate" to order Cephalon to disgorge any of the fruits of its illegal conduct. Cephalon first raised this argument in a motion to dismiss the FTC's entire case as moot, which this Court properly denied as going to the merits rather than mootness. As Cephalon readily concedes, its present "motion to preclude" repackages those "merits" arguments, along with a legal argument challenging this Court's authority to order disgorgement. Both arguments are wrong.

First, Cephalon's argument about the meaning of Section 13(b) of the FTC Act has never been accepted by any court. Indeed, it has been considered and rejected by every court to address it, including eight federal circuits and numerous district courts. The Third Circuit has endorsed this uniform view. Nevertheless, Cephalon asks this Court to break with overwhelming precedent and reject long-standing Supreme Court jurisprudence about equitable relief, congressional action expressly recognizing that Section 13(b) empowers courts to order monetary remedies, and case law interpreting similar statutes governing federal agency law enforcement. Cephalon offers no sound basis for this Court to do so.

Second, Cephalon's request that this Court decide the merits of the FTC's disgorgement claim—prior to trial and based on Cephalon's view of what "facts" are and are not relevant—is both procedurally and substantively deficient. Procedurally, Cephalon's request that the Court weigh the factual record and determine an appropriate remedy is not proper on a motion in

limine. As to the merits, Cephalon offers no legitimate basis to deny relief. In government antitrust suits courts have the duty, upon finding a violation, to grant equitable relief to prevent and deter future violations. In asking this Court not to do so, Cephalon pretends that its own egregious conduct is irrelevant, focusing instead on accusations of supposed FTC gamesmanship. But Cephalon's insinuations of bad faith are baseless and Cephalon offers no plausible claim of prejudice. As the FTC will establish at trial, the equities do not rest on the side of a company that knowingly leveraged a fraudulent patent into a conspiracy to eliminate competition and deprive consumers of billions of dollars.

**Background**

The FTC's complaint charges Cephalon with unlawful monopoly maintenance to protect its sleep disorder drug Provigil from lower-cost generic competition, in violation of Section 5 of the Federal Trade Commission Act. 15 U.S.C. § 45. The FTC's authority to seek relief from this Court arises under Section 13(b) of the FTC Act. 15 U.S.C. § 53(b). The complaint seeks injunctive relief to terminate Cephalon's restriction on entry of generic Provigil and to prevent "similar and related conduct in the future," as well as "other equitable relief . . . to redress and prevent recurrence" of Cephalon's violation of law.[1]

*FTC's efforts to accelerate generic Provigil entry:* When the FTC filed its complaint in February 2008, its focus was on terminating the unlawful restraint on generic Provigil entry as quickly as possible. During the first few years of this litigation, the FTC repeatedly emphasized the public interest in prompt resolution of government suits to stop ongoing anticompetitive

---

[1] Compl. at Prayer for Relief ¶¶ 3-4, Feb. 13, 2008 (doc. 1).

conduct.[2] In hopes of expediting resolution of the case and consumer access to generic Provigil, the FTC advised that it was not seeking a monetary remedy.

The FTC's efforts to expedite its case were unsuccessful. Cephalon succeeded in exploiting the extension of its Provigil monopoly for six years without a judicial determination as to the legality of its conduct. This was Cephalon's expectation: Shortly after announcing the settlements, Cephalon's General Counsel assured investors that the FTC had no "practical remedy" because an enforcement action would take too long to "limit or undo or negate" Cephalon's financial gain from the settlements.[3]

By the time discovery began in the FTC's case, it had been more than two years since the FTC filed its lawsuit. At that point, the FTC once again expressed its concerns about timing given the agency's desire to enable consumers to obtain generic Provigil before April 2012.

> With respect to timing, I just want to remind the Court that the agreements that are at issue here, that keep generics out of the market, as—in April 2012, those agreements come to an end, the generics will be able to come in. The FTC, throughout this case, has been seeking to open up that market sooner. We're not seeking damages; we don't have the authority to do that. We're not seeking any kind of monetary relief. We're only seeking an injunction. And the injunctive relief we're seeking is to open up that market sooner for generic competition than what these parties agreed to.[4]

Beginning in 2011, however, Cephalon benefited from a series of events that put the FTC's case on hold for another two years. In August 2011, the scheduling order was vacated in

---

[2] *See, e.g.,* FTC's Opp'n to Cephalon's Mot. to Transfer at 1-3, 5-10, *FTC v. Cephalon*, No. 1:08-cv-244 (D.D.C. Mar. 6, 2008) (doc. 8) (emphasizing that transfer would delay prosecution of FTC case, at great cost to the public); Fed. R. Civ. P. 26(f)(2) Report to the Ct. at 2, May 12, 2008 (doc. 2) (explaining FTC opposition to staying discovery pending resolution of Cephalon's motion to dismiss given objective of providing consumers timely access to generic Provigil); FTC's Mem. in Supp. of Mot. for a Scheduling Conference, June 10, 2008 (doc. 5) (emphasizing FTC goal to achieve relief for consumers as soon as possible); FTC's Status Conference Mem. at 1, June 19, 2009 (doc. 33) ("[P]rompt resolution of this case is essential to provide consumers the benefit of competition from lower-priced generic drugs.").

[3] Ex. 1 at 10-11 (Tr. of Q2 2006 Cephalon, Inc. Earnings Conference Call, Aug. 3, 2006).

[4] Defendant Cephalon, Inc's Motion to Preclude the FTC's Disgorgement Claim ("Ceph. Mem."), Jan. 28, 2015 (doc. 345), Ex. 1 at 67:23-68:9 (Tr. of Proceedings Held on Apr. 22, 2010).

light of the forthcoming opinion in *Apotex v. Cephalon*, in which this Court held Cephalon's '516 particle-size patent both invalid and unenforceable due to Cephalon's inequitable conduct.[5] The case was again placed on hold in April 2012, pending a ruling by the Third Circuit in *In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012), and then further stayed pending possible action by the Supreme Court.[6] The stay continued until July 2013, after the Supreme Court's decision in *FTC v. Actavis*, 133 S. Ct. 2223 (2013).

By the time the FTC's case resumed, generic Provigil entry had already occurred, with two companies launching in the spring of 2012. In light of these changed market conditions, as well as this Court's determination that Cephalon obtained its patent through fraud, the FTC is now focused on equitable relief to redress and prevent recurrence of Cephalon's violation of law, including equitable monetary remedies.

*Supplemental discovery on equitable monetary remedies:* On July 11, 2013, this Court ordered the parties to submit a joint discovery and scheduling plan and propose "the scope of additional fact and expert discovery that should be permitted."[7] In its July 31, 2013 response, the FTC told the Court it was seeking to supplement its economic expert's report to "address appropriate equitable monetary remedies."[8] The FTC explained that this proposed supplementation was "directly tied to changed factual circumstances occurring after the close of discovery"—namely entry of generic Provigil.[9]

---

[5] Order, Aug. 23, 2011 (doc. 186); *Apotex Inc. v. Cephalon, Inc.*, No. 06-cv-2768, 2011 WL 6090696 (E.D. Pa. Nov. 7, 2011), *aff'd*, 500 F. App'x 959 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 825 (Dec. 16, 2013).

[6] Ex. 2 at 12:19-25 (Tr. of Status Conference Held on Apr. 12, 2012); Order, Aug. 29, 2012 (doc. 187).

[7] Order, July 12, 2013 (doc. 201).

[8] Letter from M. Meier to Judge Goldberg at 4, July 31, 2013 (doc. 205).

[9] *Id.* at 5.

Over Cephalon's objection,[10] the Court's December 3, 2013 amended pretrial scheduling order authorized the parties to serve supplemental expert reports containing "[a]nalyses of monetary and non-monetary remedies to account for changed factual circumstances or the standard recently set forth [in *Actavis*]."[11]

On December 20, 2013, the FTC served a supplemental report from its economic expert, Professor Roger Noll. This report included an economic analysis to determine the financial gain to Cephalon arising from its illegal agreements.[12] Professor Noll calculated several estimates of Cephalon's ill-gotten gain, ranging from $3.5 to $5.6 billion. His supplemental report explains in detail his calculations and the assumptions underlying them. Attorneys for Cephalon (and the generic firms) deposed Professor Noll on March 18, 2014, eliciting more than 25 pages of testimony on his disgorgement calculations.[13] In addition, on January 29, 2014, Cephalon served a supplemental report by its own expert, Dr. Bruce Stangle, that responds to Professor Noll's disgorgement calculations.[14]

*Cephalon's motions concerning disgorgement:* On September 20, 2013, Cephalon filed a motion to dismiss the FTC's case as moot, claiming that the entry of generic Provigil meant the FTC no longer had any viable remedy.[15] As to disgorgement, Cephalon argued that monetary equitable relief in this case would be inappropriate for three reasons: (1) the FTC did not specifically mention disgorgement in its complaint, (2) in 2009 and 2010, the FTC stated that it

---

[10] Defs.' Joint Disc. Plan and Proposed Schedule at 7, July 31, 2013 (doc. 206) ("The Court should not allow the FTC, or any party, to take this opportunity to frame entirely new theories of recovery which should have been raised long ago in this litigation.").

[11] Am. Pretrial Scheduling Order at ¶ 4(b), Dec. 3, 2013 (doc. 238).

[12] Decl. of Daniel W. Butrymowicz in Support of Plaintiff FTC's Mem. in Opp. to Cephalon's Mot. to Preclude the FTC's Disgorgement Claim, Feb. 17, 2015 ("Butrymowicz Decl.") at ¶ 5.

[13] *Id.* at ¶ 6.

[14] *Id.* at ¶ 7.

[15] Cephalon, Inc.'s Mem. in Supp. of Its Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Sept. 20, 2013 (doc. 219).

was not seeking monetary relief, and (3) a disgorgement award would violate the FTC's 2003 disgorgement policy statement.[16] The Court denied Cephalon's motion to dismiss in a footnote in its July 29, 2014 ruling granting the FTC's patent evidence preclusion motion.[17] The Court acknowledged all of Cephalon's arguments concerning disgorgement:

> To take just one form of relief the FTC says it may pursue, Cephalon argues that the Court 'should deny the FTC's belated request for monetary relief' because: (1) the FTC did not include a specific prayer for disgorgement in its complaint, (2) the FTC has often stated that it did not intend to seek monetary relief, and (3) an FTC policy statement in place for most of this litigation (though now withdrawn) would have counseled against seeking equitable monetary relief. These arguments address only the propriety of certain relief, not the Court's power to grant it.[18]

But these contentions, the Court noted, would require a decision on the "merits" of the FTC's case, and consequently were not a proper basis for a motion to dismiss for mootness: "Cephalon may or may not be right that the FTC is not entitled to any of the relief it currently seeks. But to try to answer this question on a motion challenging the Court's subject matter jurisdiction confuses mootness with the merits."[19]

In August 2014, Cephalon advised the Court that it would "shortly" be filing a "motion to strike" the FTC's disgorgement remedy.[20] Five months later, Cephalon filed this "motion to preclude," in which it asserts that the Court should decide the merits of the FTC's case for disgorgement in advance of trial. A few days prior to filing this motion, Cephalon's counsel told the Court that the upcoming motion would explain that "[m]onetary remedies . . . cannot be supported by traditional principles of equity given the undisputed facts in this case."[21] The

---

[16] *Id.* at 18-22.

[17] Mem. Op., July 29, 2014 (doc. 322).

[18] *Id.* at 2 n.2.

[19] *Id.* (internal quotation marks omitted).

[20] Letter from J. Burling to Judge Goldberg at 4, Aug. 28, 2014 (doc. 347).

[21] Letter from J. Burling to Judge Goldberg at 2, Jan. 22, 2015 (doc. 346).

motion that Cephalon ultimately filed, however, does not offer any statement of undisputed material facts, nor does it assert any affirmative defense of equitable or judicial estoppel. Rather, it simply states there cannot be "any evidence to be adduced at trial" that "could counter the equitable considerations compelling rejection of its disgorgement claim." Ceph. Mem. at 2.

## Argument

### I.    This Court has authority to order disgorgement for violations of the FTC Act

This case arises under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which provides that "in proper cases, the Commission may seek, and after proper proof, the court may issue, a permanent injunction." Courts have uniformly agreed that Section 13(b) grants district courts authority to order monetary equitable relief, including eight circuit courts of appeals,[22] district courts in the remaining four circuits,[23] and the Third Circuit in its non-precedential opinion in *FTC v. Magazine Solutions, LLC*, 432 Fed. App'x 155, 158, n.2, (3d. Cir. 2011). Cephalon contends that all of these courts were "mistaken," their decisions "flawed," and their reasoning "not valid" in light of a case it describes as "recent" Supreme Court precedent—the nearly 20-year old decision in *Meghrig v. KFC W., Inc*., 516 U.S. 479 (1996). But Cephalon's arguments

---

[22] *See FTC v. Ross,* 743 F.3d 886, 890-92 (4th Cir. 2014) (Section 13(b) confers power to award "monetary consumer redress, which is a form of equitable relief"), *cert. denied,* 135 S.Ct. 92 (2014); *FTC v. Bronson Partners*, LLC, 654 F.3d 359, 365 (2d Cir. 2011) ("Section 13(b) permits a court to order ancillary equitable relief, including monetary relief"); *FTC v. Direct Mktg. Concepts, Inc.,* 624 F.3d 1, 14-15 (1st Cir. 2010); *FTC v. Freecom Commc'ns, Inc.,* 401 F.3d 1192, 1202 n.6 (l0th Cir. 2005) ("[Section] 13(b)'s grant of authority to provide injunctive relief carries with it the full range of equitable remedies, including the power to grant consumer redress"); *FTC v. Gem Merch. Corp.,* 87 F.3d 466, 468-70 (11th Cir. 1996) (affirming disgorgement award and noting "deterrence function of section 13(b)"); *FTC v. Pantron I Corp*., 33 F.3d 1088, 1102 (9th Cir. 1994) (district courts authorized to grant monetary relief to correct "unjust enrichment"), *cert. denied* 514 U.S. 1083 (1995); *FTC v. Sec. Rare Coin & Bullion Corp.,* 931 F.2d 1312, 1314-15 (8th Cir. 1991) (Section 13(b) empowers district courts to grant equitable monetary relief); *FTC v. Amy Travel Serv., Inc.,* 875 F.2d 564, 571-72 (7th Cir. 1989) (Section 13(b) includes grant of power to order restitution), *cert. denied,* 493 U.S. 954 (1989). *See also FTC v. Sw. Sunsites, Inc.,* 665 F.2d 711, 717-18 (5th Cir. 1982) ("[A] grant of jurisdiction such as that contained in Section 13(b) carries with it the authorization for the district court to exercise the full range of equitable remedies traditionally available to it.").

[23] *See, e.g., FTC v. Mylan Labs., Inc.,* 62 F.Supp. 2d 25, 37 (D.C.C. 1999); *In re Nat'l Credit Mgmt. Gp., LLC,* 21 F. Supp. 2d 424, 461-62 (D.N.J. 1998) (citing *FTC v. Pantron I Corp*., 33 F.3d at 102); *FTC v. Kennedy,* 574 F. Supp. 2d 714, 724 (S.D. Tex. 2008); *FTC v. Solar Michigan, Inc*., 1988-2 Trade Cas. (CCH) ¶ 68,339, p. 59, 915-16 (E.D. Mich. 1988).

(1) cannot be reconciled with the Third Circuit's own reading of *Meghrig* in *United States v Lane Labs-USA, Inc.*, 427 F.3d 219 (3d Cir. 2005), (2) rest on cases construing statutes wholly unlike the FTC Act, and (3) ask this Court to adopt an interpretation of Section 19 of the FTC Act that every other court to consider the issue has rejected.

**A. Courts have uniformly agreed that Section 13(b) grants district courts the authority to order equitable monetary remedies**

All courts that have addressed the issue have agreed that Section 13(b) grants district courts authority to order equitable monetary relief. These decisions rest on principles the Supreme Court set forth in *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), and *Mitchell v. Robert Demario Jewelry, Inc.*, 361 U.S. 288 (1960). *Porter* was a government suit to enforce the Emergency Price Control Act of 1942, which provided the Administrator could enforce the Act by bringing suit for "a permanent or temporary injunction, restraining order, or other order." 328 U.S. at 397. The Supreme Court upheld an order for restitution of overcharges. In so doing, it held that "[u]nless a statute in so many words, or by necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Id.* at 398.

As the Third Circuit has explained, the Supreme Court's subsequent decision in *Mitchell v. Robert DeMario Jewelry, Inc.* "not only reinforced its ruling in *Porter*, but expanded its scope as well."[24] *Mitchell* upheld the district court's authority to grant a back-pay award in connection with an injunction against an employer's violation of the Fair Labor Standards Act. The Supreme Court rejected the contention that *Porter*'s holding turned on the phrase "or other order," (contained in the statute construed in *Porter*, but not the one at issue in *Mitchell*) and emphasized

---

[24] *Lane Labs*, 427 F.3d at 224-25.

that "the comprehensiveness of [a court's] equitable jurisdiction" does not depend on "affirmative confirmation of the power to order reimbursement." 361 U.S. at 291.

Applying *Porter* and *Mitchell*, courts have found authority to award disgorgement and other equitable monetary relief under several federal agency statutes.[25] In the first appellate decision to address the issue under Section 13(b) of the FTC Act, *FTC v. H.N. Singer, Inc.*, the Ninth Circuit considered the text and structure of the FTC Act, including the relationship of Section 13(b) and Section 19. It concluded that "there is no necessary or inescapable inference, *or, indeed, any inference*, that Congress intended to restrict the broad equitable jurisdiction apparently granted to the district court by § 13(b)." 668 F.2d 1107, 1113 (9th Cir. 1982) (emphasis supplied). The court accordingly found that Section 13(b)'s unlimited grant of authority to enter permanent injunctions carries with it authority for district courts to use the full range of their inherent equitable powers to achieve complete justice, including ordering monetary equitable relief. Subsequent appellate rulings affirming the availability of monetary equitable remedies under the FTC Act have endorsed and adopted *Singer*'s reasoning.[26]

The Third Circuit expressed its agreement with this consistent interpretation of Section 13(b) of the FTC Act in *FTC v. Magazine Solutions*. In that case, the defendant argued—as does Cephalon here—that district courts lack authority under Section 13(b) to order equitable monetary relief. Despite finding that argument had been waived, the court of appeals went on to declare it was "also incorrect." 432 Fed. App'x at 158 n.2. The court noted the uniform

---

[25] *See, e.g.*, *Lane Labs*, 427 F.3d at 225 (citing cases and upholding disgorgement under the Food, Drug, and Cosmetic Act); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) (disgorgement under the Securities and Exchange Act of 1934); *CFTC v. Petro Mktg Group, Inc.*, 680 F.2d 573, 583-84 (9th Cir. 1982) (disgorgement under the Commodity Exchange Act); *ICC v. B&T Transp. Co.*, 613 F.2d 1182, 1184-86 (1st Cir 1980) (restitution under the Motor Carrier Act). *See also United States v. Keyspan Corp.*, 763 F. Supp. 2d 633 (S.D.N.Y. 2011) (disgorgement for Sherman Act violations).

[26] *See, e.g.*, *Sec. Rare Coin & Bullion Corp.*, 931 F.2d at 1314-15 (quoting "necessary and inescapable inference" language of *Porter* and expressly adopting the reasoning of *Singer*); *Amy Travel Service*, 875 F.2d at 571-72 (same).

agreement among other appellate courts: "Our sister Courts of Appeals recognize that district courts have discretion to grant monetary relief under section 13(b)." *Id*.[27] The Third Circuit also relied on sister circuit authority concerning Section 13(b) in *Lane Labs.* In that case the court noted that other appellate courts have recognized "a court's power to order restitution or disgorgement" under federal agency statutes that "granted open-ended enforcement powers to the courts." 427 F.3d at 225 (citing, *inter alia*, *FTC v. Gem. Merch. Corp.*, 87 F.3d at 470).

Legislative history that accompanied the Federal Trade Commission Act Amendments of 1994 confirmed the courts' consistent reading of Section 13(b). Eleven years after the first appellate decision upholding monetary equitable relief under Section 13(b), Congress expanded the venue and service-of-process provisions of that section.[28] The Senate Report accompanying that legislation explicitly recognized that Section 13(b) authorizes the FTC to "go into court . . . to obtain consumer redress."[29] As the Supreme Court has repeatedly observed, where, as here, the interpretation of a statute "has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned."[30]

---

[27] Cephalon attempts to dismiss the Third Circuit's endorsement of other circuits' rulings based on the "*see, e.g.*" cite to *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d at 1202 n.6. Ceph. Mem. at 12, n. 10 (Tenth Circuit had "no cause to decide" whether monetary remedies are available under 13(b)). But *Freecom* reflects the uniform holding of the circuit courts. Furthermore, the Tenth Circuit had cause to decide the 13(b) question: the court necessarily had to assess the FTC's legal basis to assert a claim for consumer redress to determine whether the district court had abused its discretion in awarding attorney fees against the FTC. *See* 401 F.3d at 1201-02.

[28] *See* Federal Trade Commission Act Amendments of 1994, Pub. L. No. 103-312, § 10, 108 Stat. 1691 (Aug. 26, 1994).

[29] S. Rep. No. 103-130, at 15-16 (1993) ("Section 13 of the FTC Act authorizes the FTC to file suit to enjoin any violation of the FTC [Act]. The FTC can go into court ex parte to obtain an order freezing assets, and it is also able to obtain consumer redress."). Congress endorsed this understanding once again when it enacted the U.S. Safe Web Act of 2006, Pub. L. 109-455, 120 Stat. 3372 (Dec. 22, 2006)). *See also* 15 U.S.C. § 45(a)(4)(B) (referring to "restitution to … victims" as one of the remedies available to the Commission) (subject to "sunset" in 2020).

[30] *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 (1982) (internal quotation marks omitted) (citing cases).

### B. Cephalon cannot sweep aside unanimous precedents holding that Section 13(b) authorizes equitable monetary relief

Cephalon asks this Court to reject long-standing Supreme Court jurisprudence about equitable relief, the uniform holdings of courts construing the FTC Act, the acceptance of that interpretation by Congress, and the case law interpreting similar statutes governing federal agency law enforcement. Its arguments do not withstand scrutiny.

### 1. The Third Circuit has already rejected Cephalon's reading of *Meghrig*

*Lane Labs* carefully considered—and rejected—the argument that *Porter* and its progeny no longer govern public law enforcement actions in light of the analysis applied in *Meghrig* to suits by private parties. *See* 427 F.3d at 230-32. The Tenth Circuit reached the same conclusion in *United States v. Rx Depot*, stating that "rather than overruling or limiting *Porter*'s and *Mitchell*'s general rule that a grant of equity jurisdiction enables courts to order any form of equitable relief, *Meghrig* merely demonstrates that a statute's particular characteristics may preclude application of the rule." 438 F.3d 1052, 1057 (10th Cir. 2006). Indeed, as the Third Circuit observed in *Lane Labs*, since *Meghrig* the Supreme Court has continued to rely on *Porter* for the proposition that the equitable discretion of district courts is limited only when that is the necessary and inescapable inference of the statutory scheme.[31]

That was the case in *Meghrig*. The Court found it "apparent" from the statutory scheme that the Resource Conservation and Recovery Act (RCRA) does not permit private parties to recover their past costs for cleanup of hazardous waste sites. 516 U.S. at 484. It distinguished RCRA from the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), which explicitly provides for private party recovery of past cleanup costs. *Id.* at 483.

---

[31] 427 F.3d at 232 (citing *United States v. Oakland Cannabis Buyers Coop.*, 532 U.S. 483, 496 (2001) (quoting *Porter*, 328 U.S. at 398)). *See also Miller v. French*, 530 U.S. 327, 340-41 (2000) (same). Moreover, since *Meghrig*, five circuits have issued decisions upholding equitable monetary relief under Section 13(b).

The Court also found, in light of the dominant role of federal and state officials in the RCRA enforcement scheme, that "if RCRA were designed to compensate private parties for their past cleanup efforts, it would be a wholly irrational mechanism for doing so." *Id.* at 486.

In contrast, as the Third Circuit observed in *Lane Labs*, Section 13(b) grants "open-ended enforcement powers to the courts." 427 F.3d at 225. Cephalon tries to distinguish *Lane Labs*, on the ground that authority to "restrain" violations of law is broader than authority to order "injunctive relief." *See* Ceph. Mem. at 16. But this suggestion makes no substantive sense. In any event, the Third Circuit effectively rejected this argument in *Lane Labs*, when it relied on the disgorgement authority under the FTC Act.

### 2. Cephalon's other cases construed statutes wholly unlike the FTC Act

Cephalon's other cases likewise present no reason to reject three decades of case law upholding monetary remedies under Section 13(b). These cases merely reflect the statute-specific approach reflected in *Porter*, *Meghrig*, and *Lane Labs.* Unlike all of the court decisions construing Section 13(b), these decisions found that the particular statutes at issue necessarily conveyed less than the full extent of the courts' inherent equitable powers.

For example, Cephalon relies on three cases construing the class certification provisions of Federal Rule of Civil Procedure 23(b). That rule establishes different requirements for class actions seeking indivisible injunctive or declaratory relief (Rule 23(b) (2) class) and class actions seeking monetary relief (Rule 23(b) (3) class). As result, in *Wal-Mart Stores, Inc. v. Dukes,* the Supreme Court found it "clear" from the structure of Rule 23(b) and the procedural protections afforded under 23(b)(3) that the provision for injunctive relief in 23(b)(2) does not include "individualized monetary claims," such as back pay. 131 S. Ct. 2541, 2558 (2011). *Dukes* does not address whether a statute (such as Section 13(b)) that grants a federal agency unqualified

authority to ask district courts to enjoin violations of law confers authority for courts to grant ancillary equitable remedies such as disgorgement.

Cephalon's reliance on several cases addressing the scope of remedies available in private suits under the Motor Carriers Act is also misplaced. In *Lane Labs*, the Third Circuit relied on precedent holding that the Motor Carriers Act authorizes equitable monetary relief in cases brought by the federal government.[32] That courts have reached a different result under that Act when considering private suits and injunctions merely reflects *Porter*'s teaching that the district court's equitable powers may be narrower in suits by private parties than in enforcement actions brought by federal agencies in the public interest. *See* 328 U.S. at 398.

Finally, Cephalon relies extensively on the Third Circuit's decision in *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274 (3d Cir. 2013). But *Homer* merely concluded that the unusual forms of injunctive relief that the EPA proposed in that case were not authorized by statutory language providing for certain specific remedies "and other appropriate relief." The EPA conceded there was no likelihood of future violations by the defendants (former owners of a coal-fired power plant) (*id*. at 295), but the agency suggested that the court could still impose certain remedies as "other appropriate relief." *Id*. at 292. The court rejected this contention, finding that the statute does not permit injunctive relief for past permitting violations, and that EPA's proposed monetary remedy, "injunctive cap-and-trade relief," was a remedy that Congress had "deliberately omitted" for the type of violation alleged. *Id* at 292, 295-96. The Third Circuit's refusal to construe the Clean Air Act as EPA suggested presents no conflict with the numerous authorities construing Section 13(b).[33]

---

[32] *See* 427 F.3d at 225 (citing *ICC v. B & T. Transp. Co.*, 613 F.2d 1182, 1184-85 (1st Cir. 1980) (statute authorized ICC to seek "restitution").

[33] Cephalon's reliance on the decision of a divided panel of the D.C. Circuit in *United States v. Phillip Morris USA, Inc.*, 396 F.3d 1190 (D.C. Cir. 2005), is also unavailing. As explained in *Lane Labs*, the decision in that case turned

### 3. Section 19 does not limit the remedies available under Section 13(b)

Courts have consistently rejected the contention that Section 19 of the FTC Act limits district courts' authority to grant monetary relief under the earlier-enacted Section 13(b).[34] Section 19 provides certain specific judicial remedies (including not only equitable remedies, but also certain types of damages) under particular circumstances after the Commission issues a final administrative order to cease and desist. 15 U.S.C. § 57b. But, as these courts have recognized, Congress expressly provided in Section 19 that this provision was not intended to limit other remedies in the FTC Act, stating: "Nothing in this section shall be construed to affect any authority of the Commission under any other provision of law." 15 U.S.C. § 57b(e). Ignoring this plain language, Cephalon instead relies extensively on a 1992 law review article that no court has ever endorsed. Indeed, the article was discredited two years after it was published, when Congress recognized, in enacting the 1994 FTC Act Amendments, that Section 13(b) authorizes the FTC to "go into court . . . . to obtain consumer redress."[35]

Cephalon's claim that the courts' well-established reading of Section 13(b) renders Section 19 "superfluous" rests on its misconception of the purposes of the two provisions. Section 13(b) authorizes the FTC to challenge unlawful conduct directly in federal district court and to seek a permanent injunction for violations of "any law enforced by the Commission." 15 U.S.C. § 53(b). The district court, rather than the Commission, determines whether the law has been violated and fashions the proper remedy, including, where appropriate, monetary equitable relief. Alternatively, the FTC can proceed under the administrative processes set forth in Section

---

on the specific remedial provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO). *See* 427 F.3d at 233.

[34] *See, e.g.*, *FTC v. Bronson Partners, LLC*, 654 F.3d at 367; *FTC v. Sec. Rare Coin & Bullion*, 931 F.2d at 1315; *FTC v. H.N. Singer*, 668 F.2d at 1113.

[35] *See supra* at 10.

5 of the FTC Act and issue a cease-and-desist order if it finds a violation. When providing for

specific judicial remedies in Section 19, Congress gave teeth to the FTC administrative process.

Thus, rather than limiting remedies available to the Commission, Section 19, enacted two years

after Section 13(b), expanded the range of enforcement tools available to the Commission to

address violations of the FTC Act. Section 19's express statement that it did not limit remedies

already authorized in other parts of the FTC Act thus protects the distinct roles of Section 13(b)

and Section 19 in the FTC's law enforcement mission.

In 2002, the Seventh Circuit, in an opinion by Judge Posner, observed that district courts'

authority under Section 13(b) to order equitable monetary relief "cannot be questioned."[36]

Cephalon fails to offer any sound reason for this Court to do so here.

## II.    Evidence at trial will show that disgorgement is appropriate

The Supreme Court has made clear that distinct considerations concerning remedies arise

in a government antitrust suit. The government's duty to seek relief to protect the public means

that when courts consider the relief appropriate to redress an established antitrust violation, "all

doubts as to the remedy are to be resolved in [the government's] favor":

> A Government plaintiff, unlike a private plaintiff, must seek to obtain the relief
> necessary to protect the public from further anticompetitive conduct and to
> redress anticompetitive harm. And a Government plaintiff has legal authority to
> allow it to carry out this mission. . . . "[I]t is well settled that once the
> Government has successfully borne the considerable burden of establishing a
> violation of law, all doubts as to the remedy are to be resolved in its favor."

*Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 170-71 (2004) (quoting *United States*

*v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 334 (1961)).[37] As this passage reflects, courts

decide what remedy is appropriate after the government has established a violation.

---

[36] *FTC v. Think Achievement Corp.*, 312 F.3d 259, 262 (7th Cir. 2002).

[37] *See also* 2 P. Areeda & H. Hovenkamp, Antitrust Law at ¶¶ 303a, 303e (noting public interest purposes and scope of remedies distinctions between private and government suits).

Cephalon, however, seeks to avoid these straightforward principles. It urges this Court to rule—in advance of trial—that equitable principles compel rejection of a disgorgement remedy. This request is procedurally improper and rests largely on Cephalon's baseless insinuations that the FTC has acted in bad faith. Given the evidence the FTC will present at the upcoming trial about Cephalon's illegal conduct, it is not surprising that Cephalon would prefer that the Court assess the propriety of equitable monetary remedies now. But nothing in Cephalon's motion justifies contravening the normal rules of civil litigation. Regardless, Cephalon's "merits" arguments provide no basis to deny disgorgement.[38]

## A. Cephalon's motion in limine is improper

Cephalon asks the Court—on this motion alone and in advance of trial or any factual findings—to preclude the FTC's disgorgement remedy. But a determination of the appropriate remedy requires the court "to weigh all the relevant facts and circumstances and to craft appropriate relief on a case-by-case basis." *In re Blinds to go Share Purchase Litig.*, 443 F. 3d 1, 8 (1st Cir. 2006). Cephalon asserts that there cannot be "any evidence adduced at trial" that "could counter the equitable considerations compelling rejection of its disgorgement claim." Ceph. Mem. at 2. However, as explained in *Bradley v. Pittsburgh Bd. of Educ.*, "[i]n the absence of a formal motion for summary judgment, [a] plaintiff [is] under no formal compulsion to marshal all of the evidence in support of his claims." 913 F. 2d 1064, 1069-70 (3d Cir. 1990). Cephalon did not file a summary judgment motion on disgorgement, which would be untimely in

---

[38] *See, e.g., FTC v. Pantron I Corp.*, 33 F. 3d at 1102-03 (reversing district court refusal to order monetary relief after finding that this refusal "was based on the application of erroneous legal principles").

any event.[39] And it did not deliver on its promise to rest its motion on "the *undisputed* facts in this case."[40] Instead, it asks the Court to make factual determinations on a motion to preclude.[41]

A motion to preclude, like any motion in limine "is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense."[42] Motions in limine can be used to resolve legal issues, such as Cephalon's incorrect argument about the proper reading of Section 13(b). But "in light of their limited purpose, motions in limine should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards."[43] Indeed, Cephalon has cited no case in which a court used a motion to preclude to determine the appropriateness of a remedy based on the factual record rather than to resolve a purely legal issue.[44]

---

[39] *See* Am. Pretrial Scheduling Order, Dec. 3, 2013 (doc. 238).

[40] *See* Letter from J. Burling to Judge Goldberg, Jan. 22, 2015 (doc. 346), at 2.

[41] *See Pavone v. Puglisi*, No. 1:08-cv-2389, 2013 WL 245745, at *2 (S.D.N.Y. Jan. 23, 2013) ("Defendants cannot evade the procedural requirements of Rule 56 by offering arguments for summary judgment in a motion in limine.").

[42] *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F. Supp. 2d 508, 532 (D.N.J. 2008). *See also Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial—the summary judgment motion."); *Hendrian v. Safety-Kleen Sys., Inc.*, No. 08-cv-14371, 2014 WL 117315, at *12 (E.D. Mich. Jan. 13, 2014) (finding motion in limine procedurally deficient where it "requires the Court to weigh the totality of the evidence").

[43] *Williams v. Johnson*, 747 F. Supp. 2d 10, 14 (D.D.C. 2010) (internal quotation marks omitted). Courts have found that a remedy, as part of a claim, is an appropriate subject for partial summary judgment. *See Hamblin v. British Airways PLC*, 717 F. Supp. 2d 303, 307 (E.D.N.Y. 2010) ("I see the 'claim' as being composed of both the theory of liability and the remedies that that theory supports."); *Hamza v. Saks Fifth Ave., Inc.*, No. 07-cv-5974, 2011 WL 6187078, at *5 (S.D.N.Y. Dec. 5, 2011) (denying motion to strike a claim for punitive damages because it was "an effectual motion for partial summary judgment").

[44] *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys, Inc.*, 622 F.3d 1307, 1323-24 (11th Cir. 2010) (affirming grant of motion in limine based on argument that monetary equitable relief was not available under Truth-in-Leasing statute); *DeSanto v. Rowan Univ.*, 224 F. Supp. 2d 819, 824-26 (D.N.J. 2002) (granting motion to preclude equitable remedy of reinstatement to a tenured position where court had previously held at summary judgment stage that plaintiff had insufficient evidence to establish that he would have been entitled to a tenured position in any situation); *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 453 (S.D.N.Y. 2006) (granting motion to preclude the remedy of expectancy damages because the remedy was not allowed under New York law, but declining to preclude punitive damages because whether they were warranted by the defendant's conduct "is a question for trial"); *In re Mirabilis Ventures, Inc.*, No. 6:09-cv-271, 2011 WL 2516881, at *2 (M.D. Fla. June 23, 2011) (holding that because one of the defendants was not sued in his capacity as a director, the plaintiff could not seek disgorgement of his director salary).

Cephalon's "merits" arguments identify no such legal issue. Instead, Cephalon suggests that its accusations about supposed FTC misconduct "compel[] rejection of its disgorgement claim." Ceph. Mem. at 2. As discussed below, these accusations are baseless and provide no legal basis to grant its motion.

**B. Evidence at trial will show disgorgement is warranted**

As the FTC will show at trial, Cephalon profited handsomely from its illegal conduct while consumers suffered billions of dollars in harm. It is thus in the public interest to disgorge Cephalon's unjust enrichment to deter future unlawful conduct. Cephalon ignores these considerations, relying instead on: (1) baseless accusations that the FTC has behaved improperly; (2) Cephalon's self-serving opinion that it has not engaged in a "clear violation" of law; and (3) assertions that pending private suits for damages automatically render a disgorgement award duplicative and per se inequitable.

**1. Evidence of Cephalon's violation and related factors support disgorgement**

Disgorgement is an equitable remedy, the purpose of which is "deterrence and preventing unjust enrichment." *SEC v. Teo*, 746 F.3d 90, 107 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 675 (2014). In the context of government enforcement, "disgorgement is a distinctly public-regarding remedy." *FTC v. Bronson Partners*, 654 F.3d at 372. As a result, courts can "go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Id.* at 373 (quoting *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 326 (1999)).

Facts already found, and others the evidence at trial will establish, support a disgorgement award. First, the nature of Cephalon's conduct calls for an effective remedy. Cephalon began its illegal scheme by perpetrating fraud on the U.S. Patent and Trademark

Office: "Cephalon made a deliberate choice to deceive the PTO about the origin of its claimed invention." *Apotex Inc. v. Cephalon, Inc.*, 2011 WL 6090696, at *28. As the FTC will show at trial, Cephalon then knowingly used this fraudulent patent as a pretext to pay four potential competitors to stay out of the Provigil market. Second, the FTC will demonstrate that Cephalon received an enormous financial benefit from this conduct. As its then-CEO presciently explained, "We were able to get six more years of patent protection. That's $4 billion in sales that no one expected." Compl. at ¶ 4. These additional profits came at the expense of consumers who, for six years, paid artificially high prices. Third, Cephalon should not retain its multi-billion dollar illegal gain merely because, as it expected, its illegal agreement ran its course before any judicial decision.[45] A disgorgement award would be appropriate to deprive Cephalon of its unjust enrichment and would serve the public interest by deterring future anticompetitive reverse payments.[46]

In a footnote, Cephalon argues that the Court must ignore its fraudulent conduct because the FTC did not separately assert a claim for fraud on the Patent Office. Ceph Mem. at 23 n.18. To be sure, the FTC's claim does not rest on a finding of fraud, but that finding, now made, is undeniably relevant to the FTC's reverse-payment case. Cephalon's knowledge that its patent was fraudulent is highly probative of why it paid hundreds of millions of dollars to the generic filers as part of its patent settlements. Indeed, patent fraud has always been relevant in reverse payment cases.[47] Moreover, conduct beyond the specific violation at issue can properly be

---

[45] Ex. 1 at 10-11.

[46] *See FTC v. Gem Merch. Corp*, 87 F.3d at 470 (noting that purpose of disgorgement is to deter future violations by depriving the wrongdoer of its ill-gotten gain).

[47] S*ee* Mem. Op. at 13-14, July 29, 2014 (doc. 322) (noting that "the scope-of-the-patent cases were quite uniform in recognizing an exception to immunity for fraudulently obtained patents").

considered when courts consider equitable remedies.[48] This Court can and should take into account Cephalon's fraudulent conduct as a significant factor in its equitable analysis.

### 2. Cephalon's arguments do not establish disgorgement would be inequitable

*Cephalon's accusations of FTC misconduct:* Cephalon's primary merits argument rests on its false accusation that the FTC changed its position on seeking equitable monetary relief "simply because it became strategically convenient." Ceph. Mem at 18. As discussed in our response to Cephalon's mootness motion, and summarized in the background section above, the facts amply refute Cephalon's insinuations of bad faith. Moreover, Cephalon has no plausible claim that it suffered any prejudice from the FTC change of position.

First, as long as there was a prospect of accelerating entry of generic Provigil, the FTC was willing to forgo consideration of a monetary remedy. But Cephalon successfully opposed efforts to speed resolution of this case. Cephalon has thus been able to enjoy the full six-year extension of its Provigil monopoly, and "[d]isgorgement is particularly appropriate where, as here, the anticompetitive conduct in question has ceased." *See United States v. Keyspan Corp.,* 763 F. Supp. 2d at 640. Additionally, it has now been established that Cephalon's Provigil patent was fraudulent. As the Third Circuit observed in *Kirby v. Dep't of Hous. & Urban Dev.,* 745 F.2d 204, 207 (3d Cir. 1984), changed circumstances will frequently necessitate a change in relief.[49] The FTC's decision to pursue monetary remedies is an appropriate response to the dramatic changes in circumstances since it brought its case.

---

[48] *See, e.g., FTC v. Five-Star Auto Club, Inc.,* 97 F. Supp. 2d 502, 519, 536 (S.D.N.Y. 2000) (considering unrelated prior bad acts of defendant in fashioning an appropriate injunction); *United States v. Richlyn Labs., Inc.,* 827 F. Supp. 1145, 1150 (E.D. Pa. 1992) (looking at defendant's past misconduct to determine likelihood of future violations).

[49] Contrary to Cephalon's suggestion, there is no requirement that disgorgement be specifically mentioned in a plaintiff's complaint. Ceph. Mem. at 19. The FTC's prayer for relief requested "such other equitable relief as the Court finds necessary to redress and prevent recurrence of Cephalon's violation." FTC. Compl. Prayer for Relief at ¶ 4. The Third Circuit has found such language sufficient to include a broad range of appropriate remedies. *See Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros, Inc.,* 201 F.3d 231, 249 (3d Cir. 1999) (request for "such other

Second, Cephalon's "disclaimer" argument is foreclosed by the Supreme Court's decision in *Albermarle Paper Co. v. Moody*. That case held that, consistent with Federal Rule of Civil Procedure 54(c), the plaintiffs' disclaimer of any interest in back-pay for five years after they filed the complaint would not preclude their back-pay claim absent a finding that their disavowal "improperly and substantially prejudiced the other party." 422 U.S. 405, 423-24 (1975).[50] And this exception is even narrower when the plaintiff is the government acting in the public interest: "[U]nless the government did something which in good conscience it should not have done, or failed to do something fair dealing required it to do, it comes into court with clean hands and is entitled to the equitable relief it obtained." *United States v. Second Nat'l Bank*, 502 F.2d 535, 548 (5th Cir. 1974) (internal quotation marks omitted).

Cephalon is still unable to explain how the FTC's change of position caused it any prejudice, let alone the unfair, "substantial prejudice" required by *Albermarle Paper Co.* The FTC notified Cephalon and the Court of its intention to seek disgorgement when the Court reopened this case in July 2013, after it had been stayed since 2011. The Court gave Cephalon a full and fair opportunity to request whatever additional fact or expert discovery it needed to defend the disgorgement claim, and Cephalon availed itself of that opportunity. It deposed the FTC's economic expert, Professor Roger Noll, about his method of calculating disgorgement and his prior experience determining disgorgement. It also retained its own economic expert to rebut

relief as the Court deems just and reasonable" encompassed specific performance, given that "the demand for judgment [need not] be pled with great specificity"); *Francois v. Francois*, 599 F.2d 1286, 1293-94 (3d Cir. 1979) (award of sole title to disputed property appropriate in light of prayer for "such other and further relief as the court deems just and proper" and Rule 54(c)).

[50] Fed. R. Civ. P. 54(c) provides that a court "should grant the relief to which each party is entitled even if the party has not demanded that relief in its pleadings." Cephalon also cites cases addressing judicial and equitable estoppel, but—for good reason—does not argue that these doctrines apply here. *See In re Armstrong World Indus.*, 432 F.3d 507, 517 (3d Cir. 2005) (holding that judicial estoppel does not bar party that supported bankruptcy reorganization plan from later objecting to that plan); *Hofferica v. St. Mary Med. Ctr.*, 826 F. Supp. 2d 813, 823 (E.D. Pa. 2011) (noting that equitable estoppel prevents a litigant from changing its position only when the other party detrimentally relied on its previous position).

Professor Noll's disgorgement analysis. In short, the FTC and Cephalon have proceeded for the past year and a half with a potential disgorgement remedy as a part of this case.

Cephalon has previously asserted that the prejudice it suffered is "obvious" because its "litigation strategy and risk assessment" would have been different "in the face of a potentially multi-billion dollar claim by the FTC."[51] But Cephalon has not explained how its litigation strategy would have differed given that it was simultaneously defending multi-billion dollar treble damages claims in private class action suits. Nor can it explain why the supplemental discovery period did not give it a full and fair opportunity to defend against the FTC's disgorgement claim.[52]

Finally, Cephalon relies heavily on *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, in which the First Circuit affirmed a finding the Puerto Rico government officials had acted in bad faith by essentially participating in a scheme to extort gasoline wholesalers. 60 F.3d 867, 879 (1st Cir. 1995). Cephalon's attempt to equate the FTC's conduct with the sort of egregious government misconduct found in *Texaco* is preposterous.

*"Clear violation" requirement*: Cephalon's insistence that the Court should preclude disgorgement on the ground that its conduct did not constitute a "clear violation" of law fails on the facts and the law. First, Cephalon's conduct *was* a clear violation of the antitrust laws under any standard. As this Court has recognized, every court to consider reverse-payment settlements has agreed that a reverse payment to protect a fraudulent patent is likely unlawful. *See King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 525-29 (E.D. Pa. 2010)

---

[51] Cephalon's Reply Mem. in Supp. of Its Mot. to Dismiss Pl. FTC's Compl. for Lack of Subject Matter Jurisdiction at 3, Dec. 20, 2013 (doc. 243).

[52] Cephalon has also previously asserted that it need not show prejudice. *See* Cephalon's Reply Mem. in Supp. of Its Mot. to Dismiss Pl. FTC's Compl. for Lack of Subject Matter Jurisdiction, at 3, Dec. 20, 2013 (doc. 243). It relies on *Atlantic Purchaser, Inc. v. Aircraft Sales, Inc.*, but that case upheld a finding of prejudice where the plaintiff sought to collect treble damages under a state unfair trade practices statute after a jury verdict that awarded compensatory and punitive damages under a common law theory of recovery. 705 F.2d 712, 717 (4th Cir. 1983).

(collecting cases). Here, the Federal Circuit has affirmed this Court's determination that Cephalon procured its Provigil patent by fraud. 500 F. App'x 959. And Cephalon errs when it contends that the FTC conceded there was no "clear violation" in 2009 by telling the court that its complaint would fail to state a claim under the "scope of the patent" test that the Supreme Court rejected in *FTC v. Actavis*. Ceph. Mem. at 20-21. That Cephalon's fraudulent conduct had not yet been exposed does not change the fact that the fraud occurred or render it irrelevant to this Court's consideration of appropriate remedies.

Second, there is no legal rule that requires a court to find a clear violation of law before it can award disgorgement. Cephalon asserts that disgorgement is "generally limited to instances of 'conscious wrongdoing.'" Ceph. Mem. at 21 (citing Restatement (Third) of Restitution and Unjust Enrichment § 3 & cmt. a (2011)). But the Restatement expressly provides that a "conscious wrongdoer" includes one who acts "despite a known risk" that its conduct would be a violation. Restatement § 51(3)(b). This Court has already found that "Cephalon—the signatory of the settlement agreements and the entity accused of antitrust violations—must be held to have had knowledge of its own [fraudulent] misconduct." Mem. Op. at 13, July 29, 2014 (doc. 322).

Cephalon also suggests that the Court's equitable discretion is limited by a now-withdrawn 2003 FTC policy statement. That policy statement, however, clearly stated that the Commission considered reverse-payment cases suitable for equitable monetary remedies, such as "disgorgement of illegally obtained profits."[53] Moreover, by its express terms, the policy statement was a discussion of factors the FTC would "consider" in deciding whether to exercise its "prosecutorial discretion" to seek such remedies.[54] Even if it were still in effect, this policy

---

[53] *See* Federal Trade Comm'n, Policy Statement on Monetary Equitable Remedies in Competition Cases, 68 Fed. Reg. 45820, 45822 (Aug. 4, 2003)*, available at* http://www.ftc.gov/public-statements/2003/07/policy-statement-monetary-equitable-remedies-including-particular.

[54] *Id.* at 45820-21 and n.4.

statement would not bind agency action, let alone limit this Court's ability to grant a monetary remedy.[55]

Finally, Cephalon errs when it suggests that disgorgement is not appropriate here because—in the company's opinion—this is not a "proper case" to be litigated under Section 13(b) of the FTC Act. As various courts have observed, a "proper case" is a case that the Commission deems appropriate to bring directly to federal district court to enjoin "any violation of a statute administered by the FTC."[56]

*Duplication of private damages claims:* Cephalon's duplication argument fails for two reasons. First, it ignores the difference between disgorgement and damages. "Disgorgement contemplates total recovery from the wrongdoer, not recovery that may be partial or limited to a few of the total number injured or subject to a compromise of actual damages."[57] And Cephalon is attempting to avoid both; it is seeking to retain all of its ill-gotten gains by contesting both the FTC's right to disgorgement and the private plaintiffs' right to recover damages.[58]

---

[55] *See, e.g.*, *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986) (Scalia, J.) (statement of enforcement policy "merely announced [Secretary of Labor's] tentative intentions for the future, leaving him[] free to exercise his informed discretion" (internal quotation marks and citations omitted)); *Chicago Bridge & Iron Co. v. FTC*, 534 F.3d 410, 434 n.13 (5th Cir. 2008) ("Enforcement policy is not binding on the agency and has no force of law.").

[56] *See, e.g.*, *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020 (7th Cir. 1988) (noting that this interpretation "has also been accepted explicitly by several other courts.").

[57] *SEC v. Penn Cent. Co.*, 425 F. Supp. 593, 599 (E.D. Pa. 1976). *See also SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir.1987), *cert. denied*, 486 U.S. 1014 (1988) ("Once the Commission has established that a defendant has violated the securities laws, the district court possesses the equitable power to grant disgorgement . . . . Whether or not any investors may be entitled to money damages is immaterial." (internal quotation marks and alteration omitted)). The cases cited by Cephalon are inapposite because they all involve situations where *the same plaintiff* requested disgorgement that was duplicative of another monetary claim. *See Jablonski v. Riverwalk Holding, Ltd.*, No. 11-cv-840, 2012 WL 2254257, at *8 (N.D. Ill. June 14, 2012) (declining to award disgorgement where same plaintiff has damages claim for identical amount); *Schwab v. Philip Morris USA, Inc.*, No. 04-cv-1945 2005 WL 2303821, at *1 (E.D.N.Y. Sept. 22, 2005) (same); *CFTC v. White Pine Trust Corp.*, No. 04-cv-2093, 2007 WL 1754819, at *8-9 (S.D. Cal. Apr. 20, 2007) (declining to award disgorgement when CFTC had claims for both restitution and disgorgement and stated that the amount for both was the same).

[58] *See* Defs.' Mem. in Opp. to *King Drug* Direct Purchaser Class Pls.' Mot. for Class Cert. at 20-25, No. 2:06-cv-1797, June 19, 2014 (doc. 704) (arguing that "many, if not all" of the proposed direct purchaser class members were not injured because the generic firms would have bypassed them and sold directly to pharmacies; Defs.' Mem. of Law in Opp. to End-Payor Pls.' Mot. for Class Cert. at 20, No. 2:06-cv-1833, June 19, 2014 (doc. 365) (arguing that

More fundamentally, Cephalon has no plausible argument that disgorgement here would result in any duplicative recovery. The FTC's proposed disgorgement remedy would put any award into a Consumer Relief Fund, thereby avoiding any double recovery.[59] Until extinguished, this fund could be used to resolve any existing Provigil antitrust claim in the co-pending cases. The FTC has many years of experience managing such funds, and there has never been an instance of double recovery.

We respectfully request that the Court deny Cephalon's motion to preclude the FTC's disgorgement claim.


Dated: February 17, 2015                    */s/ Markus H. Meier*
                                            MARKUS H. MEIER

                                            *Counsel for Plaintiff Federal Trade Commission*

---

the proposed indirect purchaser class should not be certified and that many members of that class cannot recover damages).

[59] *See SEC v. Risman*, 7 Fed. App'x 30 (2d Cir. 2001) (concluding that SEC disgorgement fund would not lead to double recovery).