IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **NO. 08-2141** |
| **CEPHALON, INC.,** et al. | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                                    **October 13, 2021**

This antitrust case emanates from several Hatch-Waxman "reverse payment" settlement agreements entered into between Defendant Cephalon, Inc. ("Cephalon") and four generic drug companies.[1] In February 2008, the Federal Trade Commission ("FTC") filed a lawsuit against these entities claiming that they engaged in anticompetitive conduct in connection with the prescription drug Provigil®. After extensive litigation, the FTC and Defendants agreed to settle their dispute, and, on June 17, 2015, I entered a Stipulated Order for Permanent Injunction and Equitable Monetary Relief (the "Consent Decree"), which dismissed the FTC case with prejudice.

Plaintiff-Intervenor the State of Louisiana ("Louisiana") now moves to intervene in this action, pursuant to Federal Rule of Civil Procedure 24, in order to preserve its potential claim on the funds provided pursuant to the Stipulated Order. Defendants Cephalon, Teva Pharmaceuticals Industries, Ltd., Teva Pharmaceuticals USA, Inc., and Barr Laboratories, Inc. (collectively,

---

[1] Barr Pharmaceuticals, Inc.; Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc.; Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA, Inc.; and Ranbaxy Laboratories, Ltd. and Ranbaxy Pharmaceuticals, Inc.

Defendants") all oppose that intervention. For the following reasons, I will deny Louisiana's request to intervene.

## I. FACTUAL BACKGROUND

### A. The Federal Trade Commission Case

The June 17, 2015 Consent Decree, in question, provided that Cephalon and its related entities were to pay $1.2 billion into a settlement fund ("Settlement Fund") governed by the Settlement Fund Disbursement Agreement, which was attached to the Consent Decree. Those monies were to be "held in trust to satisfy the amount of any settlement or judgment in a Related Case." (Consent Decree, ECF No. 405, at 10.) "Related Case" is defined, in relevant part, as:

> [A]ny other government investigation or litigation that threatened in writing or filed that seeks to recover damages or equitable monetary relief based on alleged anticompetitive or other unlawful practices by the Cephalon Parties in connection with (1) the procurement, listing or enforcement of patents related to the drug Provigil®, (ii) FDA exclusivities related to the drug Provigil®; or (iii) settling litigation related to the drug Provigil®.

(Id. at 5–6.) The Consent Decree was originally set to expire ten years after the date of entry, and stated that the Court "retain[ed] jurisdiction of this matter for purposes of construction, modification, and enforcement of" the Consent Decree." (Id. at 14.)

Pursuant to the Settlement Fund Disbursement Agreement, "[t]he [FTC] shall close the Settlement Account if the entire Settlement Fund . . . has been fully disbursed or, in accordance with Paragraph 7, if the Commission pays any monies remaining in the Settlement Account . . . to the Treasurer of the United States." (Settlement Fund Disbursement Agreement, ECF No. 405, ¶ 17.) Paragraph 7 mandates that "[t]he Cephalon Parties shall submit a list of Related Cases that have not been settled and for which a judgment has not been entered ('Remaining Cases List') on or up to 30 (thirty) days before the five-year anniversary of the entry of this Order, and each year thereafter, until, in the good faith belief of the Cephalon Parties, settlements have been reached, or final

judgments entered, in the relevant Related Cases." (Id. ¶ 7.) "If the Cephalon Parties do not submit a Remaining Cases List as provided in this paragraph, or the term of the Order has expired, any monies remaining in the Settlement Account, less reasonable administrative expenses, shall be paid to the Treasurer of the United States." (Id.)

On February 21, 2019, upon agreement of the parties, I entered a Revised Order for Permanent Injunction and Equitable Monetary Relief ("Revised Consent Decree). (ECF No. 410.) Under this Revised Consent Decree, the original Settlement Fund Disbursement Agreement still governs, but the expiration date of original Consent Decree was extended through February 21, 2029. (Id. at 26.) Thus, I continue to retain jurisdiction for purposes of "construction, modification, and enforcement of the Revised Order." (Id.)

### B.     The Louisiana State Case

On July 10, 2015, the State of Louisiana ("Louisiana") filed suit against Cephalon (n/k/a Teva Pharmaceuticals, Inc.), Ranbaxy Pharmaceuticals, Inc., Mylan Laboratories, Inc., and Mylan Pharmaceuticals, Inc. (collectively, "State Defendants") in the 19th Judicial District Court for the Parish of East Baton Rouge, Louisiana. Similar to the case before me, Louisiana alleged that the State Defendants employed unlawful schemes designed to prevent or delay a less expensive generic version of Provigil® from entering the market. Louisiana also set forth multiple violations of Louisiana's antitrust and consumer protection laws.

Through two judgments entered on June 1, 2016 and December 8, 2016, the state court dismissed some, but not all of Louisiana's claims. When Louisiana appealed those rulings, the Louisiana Court of Appeals dismissed the appeal for want of jurisdiction because some causes of action remained and because the trial court failed to include in its order the requisite language indicating that the December 8, 2016 judgment was a final judgment. State by and through Caldwell

v. Teva Pharms. Indus., Ltd., 242 So.3d 597 (La. Ct. App. 2018).  Louisiana does not report any further action on the case since February of 2018.

Louisiana concedes that, pursuant to its reporting obligations in the Stipulated Order, Cephalon/Teva has reported Louisiana's state court suit each year as a Related Case.

## II.     DISCUSSION

Federal Rule of Civil Procedure 24 provides, in pertinent part:

> **(a) Intervention of Right.**  On timely motion, the court must permit anyone to intervene who:
> . . .
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> . . .
>
> **(b) Permissive Intervention**.
>
> **(1) In General.**  On timely, motion, the court may permit anyone to intervene who:
> . . .
> **(B)** has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24.

Louisiana currently seeks to intervene in the federal case before me both (1) as a matter of right under Federal Rule of Civil Procedure 24(a)(2) and (2) on a permissive basis under Federal Rule of Civil Procedure 24(b)(1)(B).  Specifically, Louisiana asserts that it has a claim to the funds provided pursuant to the Revised Consent Decree and that it is the sole remaining "Related Case."

Defendants oppose Louisiana's Motion on two grounds.  First, they contend that the Motion is untimely, having been filed more than five years after the entry of the Consent Decree without any articulation of extraordinary circumstances.  Second, they assert that Louisiana has failed to establish the elements necessary for either intervention as of right or permissive intervention.

### A. Timeliness

Defendants first assert that intervention must be denied on grounds of timeliness. Louisiana responds that it seeks to intervene only with respect to the ongoing Revised Consent Decree and accompanying Settlement Fund Disbursement Agreement, in which it has an uncontested interest through its "Related Case," and over which the Court has continuing jurisdiction. Louisiana notes that it is now the sole remaining Related Case "making this motion especially timely in terms of winding up and concluding the underlying case, discharging both Cephalon/Teva and the FTC from their ongoing obligations, and enabling the Court to remove the case from the Court's docket." (Louisiana's Mot. to Intervene 5.)

Both intervention as of right under Rule 24(a)(2) and permissive intervention under Rule 24(b)(2)(B) require that intervention be sought by way of a "timely motion." "The timeliness of a motion to intervene is 'determined from all the circumstances' and, in the first instance, 'by the [trial] court in the exercise of its sound discretion.'" Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 369 (3d Cir. 1995) (quotations and additional quotation marks omitted). The mere passage of time does not render an application untimely. Id. Rather, to determine whether an intervention motion is timely, the United States Court of Appeals for the Third Circuit has identified three factors: (1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay. Id.

Under the first factor, the critical inquiry is "what proceedings of substance on the merits have occurred?" Id. Although intervention has been allowed after the entry of judgment, id. at 370, the Third Circuit has held that generally "a motion to intervene after an entry of a decree should be denied except in extraordinary circumstances." In re Fine Paper Antitrust Litig., 695 F.2d 494, 500 (3d Cir. 1982). "To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant

5

knew, or should have known, of the risk to its rights." U.S. v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 (3d Cir. 1994).

The Third Circuit confronted an analogous timeliness question in Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania., 674 F.2d 970 (3d Cir. 1982). In that case, the lawsuit in which the petitioners sought to intervene had been finally settled by consent decree on August 29, 1978. Id. at 972. In April and June 1980—over twenty months after entry of the consent decree and nearly four years after the actions had been originally filed—the petitioners sought intervention both as of right and permissively. Id. The Court found that "[t]he fact that [the petitioners] knew or should have known of the pendency of this lawsuit at an earlier time and failed to act at that time to protect their interests weigh[ed] heavily against the timeliness of these motions [to intervene]." Id. at 975. Moreover, the Court noted that none of the circumstances or facts on which the petitioners based their claim for relief had changed since entry of the consent decree, and the mere modification of the consent decree in the interim had no bearing on their claims. Id. The Third Circuit concluded that because the petitioners could not reasonably assert that they were unaware of the pendency of the lawsuit or entry of the consent decree, they had failed to demonstrate extraordinary circumstances to satisfactorily explain the long delay.

Here, the FTC's lawsuit against Defendants was filed in February 2008 and continued over the course of more than seven years before ultimately settling on June 17, 2015. Before settlement, the case proceeded publicly, and the settlement itself was publicly reported. Louisiana does not claim that it was unaware of the FTC action, and, indeed, immediately after entry of the Consent Decree, it filed its own case in state court alleging almost identical antitrust and unfair competition allegations. Defendants have repeatedly reported the Louisiana case as a "Related Case" under its annual reporting obligations. Nonetheless, Louisiana, did not seek intervention until five and a half years later, in January 2021, purportedly attempting to protect its interest in the remaining but

6

dwindling FTC funds. Such delay, in the absence of any extraordinary circumstances, weighs against a finding of timeliness.

Under the second factor, the Third Circuit has recognized that "prejudice can result when a party seeks to intervene at a late point in litigation." U.S. v. Territory of Virgin Islands, 784 F.3d 514, 524 (3d Cir. 2014). Louisiana posits that there is no potential prejudice to the existing parties to the suit here because it "is not seeking to alter or otherwise affect the legal status as between the FTC and the Cephalon/Teva parties." (Louisiana's Mot. to Intervene 5.) It goes on to claim, without further explanation, that "Louisiana's proposed intervention seeks to bring the obligations between the parties to a close." (Id.)

This argument does not satisfactorily explain what the purpose of Louisiana's intervention would be particularly when Louisiana's state case is already marked as a "Related Case." Under the Revised Consent Decree, which will not expire until 2029, Louisiana will be entitled to its fair portion of the remaining settlement funds if and when it obtains a judgment on its underlying claims in state court. To the extent Louisiana seeks to intervene in order to modify the terms of the Consent Decree or litigate its own state antitrust claims here, such intervention would severely prejudice the FTC and Defendants who have fully and finally settled their claims and have been implementing the provisions of the Consent Decree for five and a half years. See Richard C. ex rel. Kathy B. v. Houstoun, 196 F.R.D. 288, 295 (W.D. Pa. 1999) (finding prejudice where proposed intervenors filed a motion to intervene to enforce provisions of settlement agreement after the parties had already been implementing the provisions of the agreement on behalf of class members for years). As further litigation of the terms of the Consent Decree would require the expenditure of additional time and money, I find that the prejudice factor weighs against a finding of timeliness.

Finally, under the third factor, a proposed intervenor's failure to explain why it did not file its intervention motion sooner weighs against timeliness. See In re Gen. Motors Corp. Pickup Truck

7

Fuel Tank Prods. Liab. Litig., No. MDL 961, 1996 WL 683785, at *5 (E.D Pa. Nov. 25, 1996), aff'd, 134 F.3d 133 (3d Cir. 1998); Richard C. ex rel. Kathy B., 196 F.R.D. at 293. Louisiana expressly admits that "there is no particular reason for the delay other than that, after becoming the sole remaining 'Related Case,' Louisiana recognized that it could resolve its claims more quickly by proceeding here, while also taking advantage of this Court's vast institutional knowledge of the case." (Louisiana's Mot. to Intervene 5.)

In short, Louisiana effectively concedes that, having seemingly abandoned its state antitrust case since 2018, it now—three years later—seeks a new forum in which to pursue its claims. This explanation falls far short of justifying such delay and attempting to intervene in an already-resolved matter.

Under all three of the enumerated factors, I find that Louisiana's Motion to Intervene is untimely.

### B. Merits of the Motion for Intervention

Notwithstanding my finding that the Motion is untimely, I will also briefly address on the merits both Louisiana's request for intervention as of right and its request for permissive intervention.

#### 1. Intervention as of Right

The Third Circuit has interpreted Federal Rule of Civil Procedure 24(a)(2) to require proof of three additional elements from an applicant seeking intervention as of right: (1) a sufficient interest in the litigation; (2) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (3) inadequate representation of the prospective intervenor's interest by existing parties to the litigation. Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969 (3d Cir. 1998).

      *a. Sufficient Interest in the Litigation*

"There is no precise and authoritative definition of the interest required to sustain a right to intervene under Rule 24." Deskevich v. Spirit Fabs, Inc., No. 20-cv-1387, 2021 WL 880429, at *1 (M.D. Pa. Mar. 9, 2021) (internal quotations omitted). It is clear that mere economic interest in the outcome of the litigation is insufficient. Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005) (citations omitted). Rather a prospective intervenor must demonstrate "an interest relating to the property or transaction which is the subject of the action." Id. (quotations omitted). The intervenor's interest must be "'direct,' as opposed to contingent or remote." Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987) (citations omitted). "An interest that is collateral to the action or contingent on the future occurrence of a sequence of events is insufficient." State Farm Fire & Cas. Co., No. 15-cv-6752, 2016 WL 8668295, at *4 (E.D. Pa. Nov. 4, 2016) (quoting 6 Moore's Federal Practice sec. 24.03(1)(a) (3d ed. 2015)). Moreover, "the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene." Mountain Top, 72 F.3d at 366; see also Lexington Ins. Co. v. Caleco, Inc., No. 01-cv-5196, 2003 WL 21652163, at *7 (E.D. Pa. Jan. 25, 2003) (denying intervention under Rule 24(a)(2) where proposed intervenors' interest was contingent upon obtaining judgment in related state court action).

Louisiana offers only a conclusory argument that it "unquestionably has a sufficient interest in the litigation" because, through its "Related Case," it has an interest in the Settlement Fund created through the FTC's settlement of its case against Cephalon. (Louisiana's Mot. to Intervene 6.) But, under the Consent Decree, "the amount of the Settlement Fund that is deposited into the Settlement Account shall be held in trust to satisfy the amount of *any settlement or judgment in a Related Case.*" (Consent Decree 10 (emphasis added).) Louisiana has no such settlement or judgment in its state court action. Rather, it seeks intervention only to ensure access to the

9

Settlement Fund in the event that it obtains a favorable settlement or judgment in the state action, which, based on the information provided, has been stagnant for an extended period. Louisiana's proposed interest is contingent, rendering it an insufficient basis on which to allow intervention as of right.

### b. Threat of Impairment

To meet the requirements of Rule 24(a)(2), a proposed intervenor must also demonstrate that its interest "*might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." Mountain Top, 72 F.3d at 368 (citations omitted) (emphasis in original). "[T]he court must consider not only the nature of the relief sought . . ., but also the practical consequences of such a ruling." Am. Farm Bureau Federation v. U.S. Envt'l Protection Agency, 278 F.R.D. 98, 109 (M.D. Pa. 2011). "It is not sufficient that the claim be incidentally affected; rather there must be a tangible threat to the applicant's legal interest." In re Safeguard Scientifics, 220 F.R.D. 43, 48 (E.D. Pa. 2004).

Louisiana asserts that its interest in the Settlement Fund could be impaired because paragraph seven of the Consent Decree provides that "[i]f the Cephalon Parties do not submit a Remaining Cases List . . . or the term of the Order has expired, any monies remaining in the Settlement Account, less reasonable administrative expenses, shall be paid to the Treasurer of the United States." (Consent Decree ¶ 7.) Louisiana speculates that if either (a) the Cephalon Parties fail provided un updated case list or (b) the term of the Order expires before it obtains a judgment or settlement in the Louisiana case, it could lose access to the funds the FTC procured on its behalf.

Any such alleged threat of impairment is insufficient to meet Louisiana's burden for three reasons. First, Louisiana admits, and Defendants have established, that the Louisiana case has been and will continue to be identified as a Related Case on the "Remaining Case List." (Louisiana's Mot. to Intervene 3; Decl. of Devora Allon ("Allon Decl."), ECF No. 418-1, ¶¶ 4-5.) Second, the

Consent Decree will not expire until 2029, meaning that Louisiana's concerns about the order expiring prior to the conclusion of its case are unfounded or, at minimum, premature. Finally, even if either of the above occurred, Louisiana remains free to pursue its claims for economic damages in its own case. Aetna Inc. v. Insys Therapeutics, Inc., 330 F.R.D. 427, 434 (E.D. Pa. 2019) (holding that "a movant's interest remains unharmed when the movant is free to bring claims in a separate action."). Accordingly, I do not find that Louisiana has satisfied this factor.

      c. *Adequate Protection of Interest*

Under the third factor, a proposed intervenor must show that "representation of their interests may be inadequate and the burden of making that showing should be treated as minimal." Safegard Scientifics, 220 F.R.D. at 48. "Generally, an applicant's rights are not adequately represented where: (1) the interest of the applicant so diverges from those of the representative party that the representative party cannot devote proper attention not the applicant's interest; (2) there is collusion between the existing parties; or (3) the representative party is not diligently prosecuting the suit." Id. (citing Alcan Aluminum, 25 F.3d at 1185–86 n.15).

Louisiana speculates that because neither the FTC nor Defendants have undertaken any obligation to ensure that Louisiana and its citizens receive the benefit of the Settlement Fund, neither existing party can be relied on to "devote proper attention" to Louisiana's interest. Although Louisiana does not allege that any party has acted adversely to its interests thus far, it contends that the potential damages due on its state claims "greatly exceed what Louisiana believes to be the amount of remaining funds." (Louisiana's Mot. to Intervene 8.)

As Louisiana admits, however, the FTC has "performed admirably" in ensuring that the Consent Decree makes a significant sum of settlement funds available until 2029. (Louisiana's Mot. to Intervene 8.) Defendants also maintain an ongoing interest in reporting the Louisiana case as a "Related Case" to ensure that any potential judgment or settlement against them can be paid from

the monies in the Settlement Fund, as opposed to separate out-of-pocket funds. As such, I do not find that Louisiana's interests are insufficiently protected.

### d. Conclusion as to Intervention as of Right

Aside from the fact that Louisiana's Motion is untimely, Louisiana has failed to establish a sufficient interest in the litigation, a threat that any interest will be impaired, or inadequate representation of its interest by the existing parties to the litigation. Accordingly, I will deny permission to intervene as of right.

### 2. Permissive Intervention

Louisiana also seeks permissive intervention under Rule 24(b), which grants discretion to the Court to permit intervention to anyone who, in part, "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The law is clear that permissive intervention has universally been left to the sound discretion of the district court. Safeguard Sciences, 220 F.R.D. at 49. In exercising this discretion, the court should consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Id. (citing Secs. & Exchange Comm'n v. U.S. Realty & Improvement Co., 310 U.S. 434, 459 (1940)).

Here, Louisiana's case against Defendants does not share a common question of law or fact with the present case. As Louisiana concedes, the FTC case against Cephalon has been settled by way of a Consent Decree. Unlike the Louisiana case, which remains pending on its merits, the FTC merits case has no more questions of law or fact remaining. Moreover, as set forth in detail above, Louisiana's interests have been adequately represented in this case by Defendants' continued reporting of the case on the "Remaining Case List." Finally, Louisiana's Motion is untimely. These reasons alone suffice to deny permissive intervention. See Brody by and through Sugzdinis v. Spang, 957 F.2d 1108, 1124 (3d Cir. 1992) ("[I]f intervention as of right is not available, the same

reasoning would indicate that it would not be an abuse of discretion to deny permissive intervention as well.").

## III.     CONCLUSION

For all of the foregoing reasons, I will deny Louisiana's Motion for Leave to File a Complaint in Intervention. An appropriate Order follows.